OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
Both defendants are charged with violating various provisions of the New York City Administrative Code. The information charges, inter alia, that each defendant on March 25, 1990 (1) violated Administrative Code of the City of New York § 26-122 in that he was an owner of premises used as a place of assembly without a current place of assembly permit; (2) violated Administrative Code § 26-122 in that he was an owner of premises used as a place of assembly without the emergency lighting required by Administrative Code § 27-542; (3) violated Administrative Code § 26-248 (g) (2) in that he was an owner of premises which was a place of assembly used as a cabaret without the sprinkler system required by Administrative Code § 27-954; (4) violated Administrative Code § 26-248 (g) (3) (a) in that he was an owner of premises in which an imminent hazard to persons and property was created by a change in occupancy from a store or office to a place of assembly used as a cabaret.
Among other things they move to dismiss these charges for facial insufficiency pursuant to CPL 170.30 (1) (a) and 170.35 (1) (a). The defendants contend that the information fails to allege a requisite mens rea element. Thus they request dismissal for failure to allege scienter. Defendants rely, in part, upon Penal Law §§ 15.10 and 15.15 (2) which incorporate a presumption against strict liability. Their arguments, however, are without merit.
It has consistently been recognized that offenses aimed primarily at the protection of public welfare and safety, may be created without scienter as a factor other than the mens rea required to commit the prohibited act (Morissette v United States, 342 US 246 [1952]; People v Munoz, 9 NY2d 51 [1961]; People v Hamburg Chrysler Plymouth, 43 NY2d 680 [1977]). Accordingly, Penal Law § 15.10 defines those offenses where strict liability is applicable as follows: "The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to *487 perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of 'strict liability.’ ”
Further, to interpret a statute in strict liability terms, there must be a clear legislative intent to impose such liability. (See, Penal Law § 15.15 [2].) The Court of Appeals in People v Coe (71 NY2d 852 [1988]) cites Public Health Law § 2805-b (2) (a) as just such an example of a clear intent to impose strict liability. This section of the Public Health Law specifies that a general hospital’s failure to render emergency medical care and treatment to a person in need is a misdemeanor. Significant in the language of the statute is not only the absence of a scienter requirement but also the legislative imposition of a duty of care upon a specified group in control.[1]
Commonly, the imposition of strict liability upon a defined group fulfills a legislative goal of keeping large classes from engaging in prohibited activity not otherwise easily monitored. Moreover, it has been posited that strict liability offenses aimed at protecting the public welfare in areas controlled by certain defined groups often requires fault in a restrictive sense since they " 'can be interpreted as legislative judgments that persons who intentionally engage in certain activities and occupy some peculiar or distinctive position of control are to be held accountable for the occurrence of certain consequences.’ ” (LaFave and Scott, Substantive Criminal Law § 3.8 [c], at 349 [1986], citing Wasserstrom, Strict Liability in the Criminal Law, 12 Stan L Rev 731, 743 [1960].)
In a similar vein, the language of the relevant sections of the Administrative Code cited in the case at bar indicates a clear legislative intent to hold that defined group who control structures strictly liable for certain enumerated violations which may be hazardous to public safety. For example, Administrative Code § 27-128 imposes an obligation upon the owners for the safe maintenance of their buildings at all times. Significant in the language of Administrative Code § 26-122 (under which the defendants are charged in the first two *488 counts) is the absence of scienter for certain offenses while including a mens rea element for the last offense. Section 26-122 states: "Every person who owns or operates a place of assembly without a current permit or emergency lighting as required by law, or who shall fail to comply with an order issued by the commissioner * * * or who shall knowingly violate any requirement of any notice or order of the commissioner, shall be guilty of a misdemeanor”.
It is a reasonable assumption that lack of a scienter requirement for some of the offenses and the inclusion of a culpable mental state for the other offense is a distinct indication that the Legislature intended the first group to be strict liability offenses (People v Davis, 112 Misc 2d 138 [Crim Ct, Bronx County 1981]; People v Simon, 148 Misc 2d 845 [Crim Ct, Bronx County 1990]; People v Tuck-It-Away, docket No. 90N758188W, Apr. 23, 1991, at 12 [Crim Ct, NY County]), especially when combined with the special duty of care imposed on owners in section 27-128.
Under the first two counts of the information, the defendant’s motion to dismiss for failure to allege a culpable mental state in the accusatory instrument is denied because the defendants stand accused under the strict liability sections of Administrative Code § 26-122.
Under the last two counts, defendants are charged under Administrative Code § 26-248 (g). For similar reasons, offenses under the aforementioned subdivision (g) are ones of strict liability. The general intent of the Code to hold owners strictly liable for certain violations coupled with the lack of scienter in subdivision (g) while including a mental culpability element in subdivision (d) warrants this conclusion.
However, one last comment regarding the defendants’ arguments is in order. The defendants are correct to the extent that they argue that the act to violate the statute, or in this case the omission to act, must be willful,[2] that is, a deliberate and voluntary act. Even under a theory of strict liability, the minimum requirement of a voluntary act has been interpreted to require scienter in the act itself. (See, People v Munoz, 9 NY2d 51 [1961], supra; People v Byrne, 77 NY2d 460 [1991]; People v Hamburg Chrysler Plymouth, 43
*489 NY2d 680 [1977], supra; People v Flushing Hosp. & Med. Center; 122 Misc 2d 260 [Crim Ct, Queens County 1983].) Thus, even though defendants are charged with strict liability offenses, the People at trial are required to prove that the specified violations occurred and that the owners willfully failed in their duty to maintain the premises in compliance therewith.
[Portions of opinion omitted for purposes of publication.]

. Public Health Law § 2805-b (2) (a) provides: "In cities with a population of one million or more * * * a general hospital shall provide emergency medical care and treatment to all persons in need of such care and treatment who arrive at the entrance to such hospital therefor. Any general hospital which fails to provide such treatment shall be guilty of a misdemeanor.”

. This argument is buttressed by a memorandum in support of the legislative enactment of section 26-248 (d) and (g) from a representative of the City Council, which states the enactments will be a deterrent to those who knowingly violate the laws.