OPINION OF THE COURT
Betsy Barros, J.
The defendant in this case is charged with a violation of Correction Law § 168-t, in that he is alleged to have failed to personally register with the local law enforcement agency as a sexually violent predator, within 90 days after his "initial release or commencement of’ probation, as mandated by Correction Law § 168-f (3) and § 168-h.[1]
On January 22, 1992, defendant pleaded guilty to a violation of Penal Law § 130.65 (1), sexual abuse (by forcible compulsion) in the first degree, and was sentenced to six months in jail and five years’ probation.
On July 25, 1995, the New York Legislature approved passage of the Sex Offender Registration Act (the Act), section 2 of *808 chapter 192 of the Laws of 1995, Correction Law § 168 et seq., commonly referred to as New York’s "Megan’s Law”. The Act became effective on January 21, 1996, almost four years to the day that the defendant completed four of the five years of his probationary term.
Intended to provide "law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly” (L 1995, ch 192, § 1), the Act imposed registration requirements on sex offenders and established procedures for the release or notification[2] to the law enforcement community and the public of information pertinent to the identity and location of convicted sex offenders.
REGISTRATION REQUIREMENTS OF THE ACT
Pursuant to the terms of the Act, a sex offender[3] on probation on January 21, 1996, must be identified by the Depart *809 ment of Probation and Correctional Alternatives (DOP) and registered[4] with the local law enforcement agency within 45 days[5] after that date. (Correction Law § 168-c [3].) DOP must also assess the sex offender’s level of risk pursuant to section 168-Z.[6] (Correction Law § 168-g [1].) Once the sex offender’s risk level is determined, DOP must notify the offender of such determination. The offender must then register with his proba *810 tion officer within 10 days of the notification. (Correction Law § 168-g [2].) If classified as a sex offender, the offender must thereafter register with the Division of Criminal Justice Services (DCJS or the Division)[7] on each anniversary of his initial registration for a period of 10 years. (Correction Law § 168-g [2]; § 168-f [2]; § 168-h.) However, an offender deemed a sexually violent predator must not only register on the anniversary of his initial registration date (Correction Law § 168-g [2]; § 168-f [2]), he must also personally "verify [his registration] quarterly [or every 90 days] for a minimum of ten years”,[8] unless otherwise ordered by the court. (Correction Law § 168-h [emphasis added].)
In his motion to dismiss, the defendant argues that under section 168-f (3) he is not required to adhere to the 90-day registration requirement until the anniversary of or one year after his initial registration. Moreover, he claims that Correction Law § 168-g (3) imposes the duty to register on his probation officer, not him. Defendant further argues that the registration requirement violates the United States Constitution’s prohibition against ex post facto laws. Finally, defendant contends that he was classified as a third level offender without having had the opportunity to appear and be heard by the "Board of Examiners”. The failure to provide him with a preassessment hearing, he argues, violates his due process rights. °
While defendant’s claims raise important issues about the scope and reach of the Act’s registration provisions, this court will not address them since a review of the accusatory instrument reveals that it is facially insufficient, a defect that is nonwaivable and deprives the court of jurisdiction to proceed further with this criminal action. (People v Alejandro, 70 NY2d 133 [1987]; People v Hall, 48 NY2d 927 [1979].)
*811 SUFFICIENCY OF ACCUSATORY INSTRUMENT
To be sufficient, an information, together with any accompanying supporting deposition, must contain an accusatory part which designates the offenses charged, and a factual statement alleging nonhearsay facts of an evidentiary nature. (CPL 100.15 [1], [2].) The factual statement must establish each element of the offenses charged, and provide reasonable cause to believe that the defendant committed said crimes. (CPL 100.40 [1] [b], [c]; People v Alejandro, 70 NY2d, supra, at 138-139.)
The accusatory part of the accusatory instrument alleges that defendant, "a sexually violent predator, failed to personally verify with the local law enforcement agency his registration every 90 days after the initial release or commencement of probation” (emphasis supplied). As applied to the defendant, this articulation of the law is incorrect.
The requirement that offenders register 90 days after the date of initial release or commencement of probation applies to offenders who, after the effective date of the Act, are "discharged, paroled or released from any state or local correctional facility, hospital or institution where [they were] confined or committed”. (Correction Law § 168-f [1], [3].) Sex offenders classified as sexually violent predators, such as the defendant, who were already serving a probationary term on the effective date of the Act, must personally verify their registration 90 days after the date that they first registered with their probation officer. (Correction Law § 168-g [2]; § 168-h.) Although the accusatory instrument in this case inaccurately describes the event which triggered defendant’s obligation to personally verify his registration as a sexually violent predator, the People correctly allege that the day on which defendant was required to verify was May 28, 1996.[9] However, the fact that the 90th day is properly identified in the accusatory instrument does not render it facially sufficient.
An information is intended to provide a defendant with actual notice of the crimes that are being brought against him as well as the factual allegations that support those charges. Such notice is intended to afford the defendant an opportunity *812 to prepare for trial and prevent a subsequent prosecution for the same offense. (People v McGuire, 5 NY2d 523, 526 [1959].)
The People’s inaccurate recitation of the date or circumstance from which the 90-day period of personal verification must be calculated does not give the defendant notice about how the People determined that he did not verify within the 90-day period. Indeed, the accusatory instrument does not even allege that the defendant was classified as a sexually violent predator, only that he is "a Level Three Sex Offender”, a designation that is not referenced in the provisions of the Act which define the registration and verification requirements imposed on offenders, but which is mentioned in Correction Law § 168-Z (6) (c). This provision establishes that if there is a high risk that the offender will repeat the offense and pose a threat to the public, the offender must be deemed a sexually violent predator and given a "level three designation”. Nowhere else in the statute is there a reference to a "level three” designation.
The failure to properly apprise the defendant of the circumstance or date from which the People calculated the effective date of verification is not a mere technicality but an essential element of the crime charged. The error is particularly significant since the law imposing such verification requirements was enacted after the defendant commenced his probationary term, and the statute, replete with registration and other deadlines, is not easily interpreted.
The allegation that the defendant was required to verify his registration 90 days after he commenced his probationary term also raises questions about whether he was properly or actually informed about the May 28th date. The People, charged with prosecuting violations of the Act, were themselves unable to accurately identify the date or event from which the 90-day period began to run. In fact, they did not change this inaccurate reference when they later amended the complaint. How then is the defendant to know how the People arrived at the May 28th date as the day on which he was supposed to verify?
This lack of clarity raises the question of whether the defendant knowingly and intentionally failed to verify his registration.
As amended, the factual allegations in the accusatory instrument state that Police Officer (P.O.) John Bardazzi, on November 18, 1996, at about 12:00 noon, at 314 W. 40th Street, *813 in the County and State of New York, was informed by P.O. Caracciolo,[10] of the Sex Offender Monitoring Unit, that
"[P.O. Caracciolo] examined the records of the New York State Department of Probation which stated that the defendant was convicted of Sexual Abuse in the First Degree and is currently on probation as a Level Three Sex Offender.
"Deponent[, P.O. Bardazzi], further states that he is informed by informant Caracciolo that * * * defendant failed to register in person with the NYPD Sex Offenders Monitoring Unit on May 28, 1996, in conformance with Section 168-g of the Correction Law.”
There is no allegation in either the accusatory or factual part of the accusatory instrument that the defendant was aware of the 90-day verification requirement and knowingly and intentionally refused to verify.
Section 168-t of the Correction Law does not expressly designate a culpable mental state. It simply states that "[a]ny person required to register pursuant to the provisions of this article who fails to register in the manner and within the time periods provided for herein shall be guilty of a class A misdemeanor”. However, Penal Law § 15.15 (2) specifically provides that where a statute defining an offense does not expressly designate a culpable mental state, "a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability.” A close reading of the Act reveals that the Legislature defined a crime of mental culpability when it imposed criminal penalties on offenders, such as the defendant, who are alleged to have failed to register or verify on a prescribed date.
Section 168-g (2), in relevant part, states that "[a]ny sex offender [on probation on January 21, 1996] who fails or refuses *814 to [register] shall be subject to the same penalties * * * which would be imposed upon a sex offender who fails or refuses to so comply with the provisions of this article on or after [January 21, 1996]” (emphasis added). The refusal language invoked in this provision presupposes volitional conduct.
The failure of the People to allege the essential elements of knowledge and intent renders the accusatory instrument facially insufficient. (People v Alejandro, 70 NY2d, supra, at 135-136; People v Tarka, 75 NY2d 996 [1990]; see also, People v Stephenson, NYLJ, Feb. 26, 1996, at 35, col 3 [App Term, 2d Dept] [criminal contempt conviction reversed where accusatory instrument failed to allege that defendant had knowledge of order of protection].)
Significantly, the accusatory instrument also does not allege the date in which the defendant was convicted or whether he was sentenced as a sex offender before or after January 21st. This omission is important because, as has been noted above, different procedural requirements are imposed on offenders released after that date. The failure to allege this information also raises questions about whether P.O. Caracciolo was trained in and familiar with the interpretation of DOP records.
P.O. Caracciolo is alleged to be assigned to a Sex Offender Monitoring Unit (SOMU), an entity not referenced in the Act or otherwise identified as having any purpose or function directly associated with the mandates articulated therein. The allegation that "defendant failed to register in person with the NYPD Sex Offenders Monitoring Unit on May 28, 1996, in conformance with Section 168-g of the Correction Law” suggests that SOMU is the "local law enforcement agency” with which the defendant is required to verify pursuant to Correction Law § 168-f (3). However, this unit does not appear to conform to the definition of "local law enforcement agency having jurisdiction” set forth in Correction Law § 168-a (4), namely, "the chief law enforcement officer in the village, town or city in which the offender expects to reside upon his discharge, probation, parole or upon any form of state or local conditional release”. It remains unclear whether the defendant was supposed to verify with SOMU or some other "local law enforcement agency”.
Officer Caracciolo’s statement that the defendant is required to register is predicated on her examination "of the records of the New York State Department of Probation”. She is not alleged to have been a custodian of the records maintained by DOP or a person with knowledge of their record-keeping practices.
*815 The information does not specify what DOP records were inspected by P.O. Caracciolo or whether they constituted "business records” within the meaning of CPLR 4518. The absence of any allegations establishing a nonhearsay source for P.O. Caracciolo’s conclusory statement that the defendant is a convicted sex offender who did not verify on May 28th renders the accusatory instrument facially insufficient, especially since there is no allegation that would establish how P.O. Caracciolo came to conclude that the defendant had not registered on May 28, 1996. (People v Alejandro, 70 NY2d, supra, at 137.)
This situation is analogous to the line of cases that preceded the passage of Administrative Code of the City of New York § 20-474.3 (a), which created a presumption that one is not licensed as general vendor if he or she fails to exhibit a general vendor’s license upon demand. In those cases, the People relied on police officers’ inspection of the Department of Consumer Affairs’ (DCA) records to support allegations that the defendants lacked general vendors’ licenses in violation of Administrative Code § 20-453. The courts ruled that the informations were jurisdictionally defective inasmuch as they contained hearsay evidence, the reliability of which had not been established by allegations that the deponents had firsthand knowledge of the record-keeping practices of the DCA or had obtained certified copies of records maintained by the agency. (See, People v Ebramha, 157 Misc 2d 217, on reconsideration 157 Misc 2d 222 [Crim Ct, NY County 1993]; People v Abdul, 157 Misc 2d 511 [Crim Ct, NY County 1993]; People v Sylla, 154 Misc 2d 112 [Crim Ct, NY County 1992].)
Similar rulings have followed challenges to the sufficiency of informations alleging violations of Vehicle and Traffic Law § 511, where the People relied on the Department of Motor Vehicles’ (DMV) abstract of operating record to support the deponent-police officers’ allegations that defendants operated their vehicles with suspended licenses. In those instances, it was held that the People were required to submit an affidavit from a DMV employee responsible for the issuance of the suspensions setting forth the procedure for the issuance and mailing of the notices of suspension. (See, People v Isabel, NYLJ, May 7, 1993, at 26, col 5 [Crim Ct, NY County]; People v Pierre, 157 Misc 2d 812 [Crim Ct, NY County 1993].)
Insofar as the accusatory instrument in this case does not allege the essential elements of the offense, namely, that the defendant, a sexually violent predator, on probation on January 21, 1996, with knowledge of his obligation to personally verify his registration with the law enforcement agency on May 28, *816 1996, intentionally failed to do so, the accusatory instrument is facially insufficient.
CONCLUSION
Based on the foregoing, defendant’s motion to dismiss is granted for facial insufficiency.

. On April 7, 1997, the People amended the complaint and changed the erroneous reference to Correction Law § 169-f (3) to Correction Law § 168-f (3) and § 168-h. They also amended the complaint to read that the defendant is on probation, not parole.

. A successful challenge to the constitutionality of the retroactive application of the notification requirements was brought in Doe v Pataki (919 F Supp 691 [SD NY 1996]), where the District Court preliminarily enjoined their application to offenders whose crimes predate January 21, 1996, after finding that the notification provisions violated the Ex Post Facto Clause. The court, which subsequently issued a permanent injunction, declined to enjoin the retroactive application of the registration provisions, ruling that they did not constitute punishment. (Doe v Pataki, 940 F Supp 603, 605, appeal pending, Nos. 96-6249, 96-6269 [2d Cir, argued Jan. 7, 1997].) (Note: Subsequent to this court’s decision, the Second Circuit handed down its decision in Doe v Pataki, 120 F3d 1263.)

. A sex offender is anyone convicted of a sexual offense or sexually violent offense. (Correction Law § 168-a [1].)
A "sex offense” is defined in Correction Law § 168-a (2), in relevant part, as: "(a) a conviction of or a conviction for an attempt to commit any of the provisions of sections 130.25 [rape, third degree], 130.30 [rape, second degree], 130.40 [sodomy, third degree], 130.45 [sodomy, second degree], 130.60 [sexual abuse, second degree], and 255.25 [incest] or article 263 [sexual performance by a child] of the penal law, or section 135.05 [unlawful imprisonment, second degree], 135.10 [unlawful imprisonment, first degree], 135.20 [kidnapping, second degree], or 135.25 [kidnapping, first degree] of such law relating to kidnapping offenses, provided the victim of such kidnapping or related offense is less than seventeen years old”.
Section 168-a (3) defines "sexually violent offense” as "(a) a conviction of or a conviction for an attempt to commit any of the provisions of sections 130.35 [rape, first degree], 130.50 [sodomy, first degree], 130.65 [sexual abuse, first degree], 130.67 [aggravated sexual abuse, second degree] and 130.70 [aggravated sexual abuse, first degree] of the penal law”.
A person convicted of a sexually violent offense or "who suffers from a mental abnormality that makes such person likely to engage in predatory sexual conduct” is a "sexually violent predator”. (Correction Law § 168-a [7] [emphasis added].)

. Registration consists of providing the local law enforcement agency "having had jurisdiction in which such person resided at the time of his conviction, if different from where he currently resides and/or where he currently resides, of the name and aliases of such sex offender, the address at which he resided and/or at which he currently resides, the amount of time to be served on * * * probation, the nature of the crime for which he was sentenced, transmitting at the same time a copy of such sex offender’s fingerprints and photograph and a summary of his criminal record.” (Correction Law § 168-c [3].)

. Unless otherwise specified, all references will be to calendar days.

. An offender’s assigned level of risk of 1 (low), 2 (moderate) or 3 (high) must be preceded by a consideration of the factors or guidelines set forth in section 168-/ (5):
"(a) criminal history factors indicative of high risk of repeat offense, including:
"(i) whether the sex offender has a mental abnormality;
"(ii) whether the sex offender’s conduct was found to be characterized by repetitive and compulsive behavior, associated with drugs or alcohol;
„ "(iii) whether the sex offender served the maximum term;
"(iv) whether the sex offender committed the felony sex offense against a child;
"(v) the age of the sex offender at the time of the commission of the first sex offense;
"(b) other criminal history factors to be considered in determining risk, including:
"(i) the relationship between such sex offender and the victim;
"(ii) whether the offense involved the use of a weapon, violence or infliction of serious bodily injury;
"(iii) the number, date and nature of prior offenses;
"(c) conditions of release that minimize risk [of] re-offense; including but not limited to whether the sex offender is under supervision; receiving counseling, therapy or treatment; or residing in a home situation that provides guidance and supervision;
"(d) physical conditions that minimize risk of re-offense, including but not limited to advanced age or debilitating illness;
"(e) whether psychological or psychiatric profiles indicate a risk of recividism;
"(f) the sex offender’s response to treatment;
"(g) recent behavior, including behavior while confined;
"(h) recent threats or gestures against persons or expressions of intent to commit additional offenses; and "(i) review of any victim impact statement.”

. The annual registration with DCJS consists of "a statement in writing signed by the sex offender giving the information that is required by [DCJS] and [DCJS] [then enters] the information into an appropriate electronic data base or file”. (Correction Law § 168-i.)

. Although Correction Law § 168-h does not indicate that the verification must be performed “personally”, this requirement is specified in Correction Law § 168-f (3) which provides that "a sexually violent predator must personally verify with the local law enforcement agency, the registration every ninety calendar days after the date of the initial release or commencement of parole” (emphasis added). While this provision refers to offenders who are released from custody after January 21, its requirement is similarly imposed on probationers and parolees released before that date, when the provision is read together with section 168-g (2) and section 168-h.

. In their response to defendant’s motion to dismiss, the People attached exhibit A, a copy of the DCJS form which purportedly memorializes defendant’s initial registration as a sex offender. This form indicates that the defendant was classified as a level 3 risk and initially registered as a sexually violent predator on February 27, 1996. Accordingly, the date by which the defendant was required to personally verify was May 28, 1996, 90 days after February 27, 1996.

. In his motion to dismiss, the defendant identifies P.O. Caracciola as a probation officer and uses the male pronoun as a further form of reference. In a footnote on page 9 of their affirmation in response to the defendant’s motion to dismiss, the People note that P.O. Caracciola is a female police officer assigned to the New York City Police Department’s Sex Offender Registration Unit who has "the responsibility for periodically examining court and police records to make sure that sexually violent predators have indeed appeared in her offices to verify their registration on a quarterly basis”.