OPINION OF THE COURT
Ethan Greenberg, J.
Defendant Charles Patterson is charged with the crime of failure to register as a sex offender pursuant to the Sex Offender Registration Act (SORA), sometimes known as “Megan’s Law.”[1] He now moves to dismiss the complaint in this case on the ground that it is facially insufficient. Defendant’s motion raises two interesting issues with respect to this complex and still relatively new law, namely: (1) the proper geographical jurisdiction for a prosecution for failure to register, and (2) in such a prosecution, the extent to which the People must plead and ultimately prove that a previously convicted sex offender acted intentionally when violating his duty to register.[2]
Defendant’s motion to dismiss shall be denied. As detailed below, the court finds first that defendant may be prosecuted in Bronx County — the county where his original sex crime was committed and where he still lives — even though the Sex Offender Monitoring Unit where defendant failed to register as a sex offender was located in New York County. Bronx County has geographical jurisdiction over this case pursuant to the “injured forum” statute, CPL 20.40 (2) (c), because defendant’s failure to register affects the Bronx in that the police and the community in the Bronx will not receive appropriate SORA notifications about defendant. However, in order to proceed with this prosecution in the Bronx under the “injured forum” statute, it will be the People’s burden at trial to prove that defendant either intended or knew that his failure to register would affect the Bronx. This would not appear to be a simple matter for the People to prove, and proof of such knowledge or intent would not be a necessary element of the People’s case if this case were instead prosecuted in New York County. Nevertheless, it is of course up to the People to decide whether as a *521 practical matter it might be simpler and wiser to reinstitute this prosecution in New York County.
Second, the court finds that the complaint in this case— which alleges that defendant signed a SORA form that set forth his duty to register at the appropriate location and date— satisfies any applicable requirement of notice or of mens rea. In that connection, this court disagrees with People v Manson (173 Misc 2d 806 [Crim Ct, NY County 1997]) which appears to require that in a failure-to-register prosecution under SORA the People must show that defendant understood his registration obligation and intentionally violated it. As detailed below, the better view is that SORA is a regulatory statute, designed to protect community safety, and that SORA imposes strict liability upon a sex offender who fails to register as required. Thus ignorance of SORA or of its particular requirements is not a defense to a charge of failure to register; and an assertion by a convicted sex offender that he did not correctly understand his registration obligation or did not consciously intend to violate the law is not a bar to prosecution and conviction under the statute. Rather, all that is required by SORA and by the constitutional principle of due process is that the People demonstrate that defendant was first given the statutorily mandated notice of his duty to register as a sex offender and that defendant thereafter violated that duty.
Analysis
A. Geographical Jurisdiction
Generally speaking, the courts of the State of New York have territorial jurisdiction over any offense defined by the laws of New York where the alleged criminal conduct or some consequence thereof has occurred within the State. (CPL 20.20; People v McLaughlin, 80 NY2d 466 [1992].)
The geographical jurisdiction of a given county within the State over an alleged crime is a question of venue. Geographical jurisdiction is not an element of that crime. (People v McLaughlin, supra; Matter of Steingut v Gold, 42 NY2d 311 [1977]; People v Tullo, 34 NY2d 712 [1974]; People v Chaitin, 94 AD2d 705 [2d Dept 1983], affd 61 NY2d 683 [1984].) While the territorial jurisdiction of the State over a crime must be proved beyond a reasonable doubt, venue in a particular county need only be established by a preponderance of the evidence. (People v McLaughlin, 80 NY2d, at 470-472.) At trial “the burden is on the People to prove by a preponderance of the ev *522 idence that the county where the crime is prosecuted is the proper venue because either the crime was committed there * * * or one of the statutory exceptions is applicable.” (People v Ribowsky, 77 NY2d 284, 291-292 [1991].) Stating the same rule somewhat differently, at trial “[w]hat is required is that [geographical] jurisdiction be fairly and reasonably inferred from all the facts and circumstances in evidence” (People v Chaitin, supra, at 705; accord, Matter of Steingut v Gold, 42 NY2d, at 316).
In this case, defendant Patterson first notes that, according to the complaint herein, defendant was required to register as a sex offender at an office established for that purpose on West 40th Street in Manhattan. He then argues that as a result the proper geographical jurisdiction for this criminal case is in New York County, and that the Bronx County Criminal Court lacks geographical jurisdiction.
The People respond by arguing that the Bronx County Criminal Court does have geographical jurisdiction over this case pursuant to CPL 20.40 (2) (c). That statute, sometimes referred to as the “injured forum” statute (see, Matter of Steingut v Gold, 42 NY2d, supra, at 314-315), provides in relevant part:
“Geographical jurisdiction of offenses; jurisdiction of counties
“A person may be convicted in an -appropriate criminal court of a particular county, of an offense * * when * * *
“2. Even though none of the conduct constituting such offense may have occurred within such county * * *
“(c) Such conduct had, or was likely to have, a particular effect upon such county or a political subdivision or part thereof, and was performed with intent that it would, or with knowledge that it was likely to, have such particular effect therein.” (CPL 20.40 [2] [c] [emphasis added].)
CPL 20.10 (4) in turn defines the term “particular effect” as that term is used in the “injured forum” statute. CPL 20.10 (4) provides in relevant part: “4. ‘Particular effect of an offense.’ When conduct constituting an offense produces consequences which, though not necessarily amounting to a result or element of such offense, have a materially harmful impact upon the governmental processes or community welfare of a particular jurisdiction, or result in the defrauding of persons in such jurisdiction, such conduct and offense have a ‘particular effect’ upon such jurisdiction.” (See, People v Fea, 47 NY2d 70 [1979].)
According to the complaint, defendant Charles Patterson was previously convicted of attempted rape in Bronx County *523 Supreme Court. Presumably, that crime was committed in the Bronx. Moreover, although the complaint does not say where defendant lives today, the court file indicates that defendant lives at a Bronx address. Thus it certainly appears that the defendant now lives in Bronx County.
The People therefore argue with considerable logical force that this case belongs in the Bronx. They assert that defendant’s failure to register as a sex offender has, in the words of CPL 20.40 (2) (c), a “particular effect” on the Bronx. That “effect” is to frustrate the twin goals of SORA as they apply to defendant. Those goals are to protect the citizens of the Bronx, where defendant now lives, and to enhance the ability of Bronx law enforcement officials to investigate and prosecute future sex crimes. (See, Doe v Pataki, 120 F3d 1263, 1276 [2d Cir 1997], cert denied 522 US 1122 [1998], supra [twin purposes of SORA are “protecting communities by notifying them of the presence of individuals who may present a danger and enhancing law enforcement authorities’ ability to fight sex crimes”].)
The court agrees that the Bronx would be an appropriate geographical jurisdiction for this case for the very reasons cited by the People. It is admittedly true that defendant was supposed to go to an office in Manhattan in order to register as a sex offender.[3] But his alleged failure to register in Manhattan plainly affects the people of the Bronx, where the defendant lives. That is so because the result of the defendant’s failure to register in Manhattan is that both the citizens of the Bronx and the police authorities in the Bronx will not receive the notifications that should appropriately flow from such registration. Thus, to paraphrase CPL 20.10 (4), defendant’s failure to register in Manhattan will have a “materially harmful impact” upon both the “governmental processes” and “community welfare” of the Bronx.
However, there are at least two somewhat formalistic, but nevertheless important, problems with the complaint in this regard. First, the People rely on thé theory that jurisdiction is appropriate in the Bronx because the defendant now lives in the Bronx. Yet the complaint in this case fails to allege that defendant lives in the Bronx.
A second and more formidable problem may be found in the language of CPL 20.40 (2) (c) upon which the People’s “injured *524 forum” jurisdictional theory relies. CPL 20.40 (2) (c) requires not only that defendant’s act have an effect in the Bronx. It also requires that defendant’s act “was performed with intent that it would, or with knowledge that it was likely to, have such particular effect” in the Bronx. Yet the complaint in this case contains no such allegation about the defendant’s intent or knowledge.
Is the misdemeanor complaint in this case therefore facially insufficient because it lacks these jurisdictional allegations? The answer is not immediately clear. In Matter of Steingut (42 NY2d 311, supra) the Court of Appeals held that in a felony prosecution where the People rely on the “injured forum” theory of CPL 20.40 (2) (c), the jurisdiction of the county seeking to prosecute the crime “must be established before the Grand Jury.” (42 NY2d, at 317.) Thus if the defendant here were charged with a felony SORA failure-to-register offense in the Bronx, then the People would be required to present proof of the “injured forum” theory to the Grand Jury.
However, this is not a felony prosecution. Defendant here is charged by a Criminal Court complaint with a misdemeanor. There is no express statutory requirement that geographical jurisdiction be set forth in a Criminal Court misdemeanor accusatory instrument. (See, Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 20.40, at 106 [“Curiously, the CPL does not contain any express provision requiring geographical jurisdiction to be set forth in local criminal court accusatory instruments (as with indictments), but such a requirement could well be implied from the filing provisions of CPL 100.55. Moreover, these instruments customarily recite the time and place of the offense”].)
Professor Preiser’s learned Commentaries notwithstanding, this court declines to imply or read into the Criminal Procedure Law a new statutory requirement that a Criminal Court misdemeanor accusatory instrument must recite facts in support of a geographical jurisdictional allegation. The standard of facial sufficiency is met when all the elements of the crime are made out by a complaint. (People v Alejandro, 70 NY2d 133 [1987].) Since geographical jurisdiction of a county over a crime is not an element of the crime, the court holds that the complaint in this case need not recite factual allegations supporting “injured forum” jurisdiction, and is facially sufficient in this regard.
That is not quite the end of the matter, however. If the People truly intend to continue to maintain this prosecution in *525 the Bronx rather than in Manhattan, then they will have the burden at trial to prove their “injured forum” theory of jurisdiction by a preponderance of the evidence. (People v Ribowsky, 77 NY2d 284, supra.) Thus the People would be required to show at trial that defendant either intended or knew that his failure to register in Manhattan would frustrate the enforcement of SORA in the Bronx. That may not be a simple matter. It would appear that in order to proceed on such a theory the People would have to prove in essence that defendant understood how SORA works and further understood that his failure to register in Manhattan would necessarily frustrate SORA notification to the Bronx. That could be a very difficult row to hoe; the People would likely be met by the argument that very few lawyers, let alone criminal defendants, yet have a sound grasp of how SORA and the SORA notification process work.
In short, the People’s legal theory as to why a Bronx court could have geographical jurisdiction over this prosecution pursuant to CPL 20.40 (2) (c) is theoretically sound. Accordingly, defendant’s motion to dismiss on jurisdictional grounds is denied. However, the People should be mindful that by proceeding on an “injured forum” theory in the Bronx, they are assuming a burden of proof at trial concerning the jurisdiction issue that would not be theirs if this case were prosecuted in Manhattan. That burden may prove difficult to meet. In view of the foregoing, the People might do well to consider bringing this prosecution (or future similar prosecutions) in New York County instead of the Bronx.
B. Failure to Register, Strict Liability and Notice
The second ground for defendant’s motion to dismiss is that the complaint is insufficient because it does not allege that defendant’s failure to register as a sex offender pursuant to SORA was knowing and intentional.
Defendant relies in this regard upon People v Manson (173 Misc 2d 806 [Crim Ct, NY County 1997], supra). That case does hold that an accusatory instrument charging failure to register must allege that the defendant knowingly and intentionally failed to register as required. (People v Manson, 173 Misc 2d, at 812, 815-816; accord, People v Peterson, NYLJ, Apr. 29, 1999, at 32, col 2 [Sup Ct, Kings County].)
The People, for their part, disagree with Manson (supra). They argue that this court should find that failure to register *526 under SORA is a strict liability crime, and that the complaint in this case satisfies any applicable requirement of notice or knowledge because the complaint alleges that defendant signed a written form that expressly advised him of his duty to register under SORA.
The question presented then is whether failure to register is a strict liability crime. The question is important because it will likely shape the future enforcement of SORA. It is an interesting question as a legal and intellectual matter, and the answer is not free from doubt. Upon consideration, this court concludes first that the failure-to-register statute, Correction Law § 168-t, does create a strict liability crime. Thus the People do not need to allege or prove that a sex offender charged with failure to register acted knowingly or intentionally.
However, when section 168-t is read in conjunction with the whole of SORA, it is nevertheless plain that before a defendant can be prosecuted for failure to register, he must first be given the statutorily mandated notice of his duty to register as a sex offender. Such notice is also likely required by due process of law. (See, Lambert v California, 355 US 225 [1957].) Accordingly, the court further concludes that a misdemeanor accusatory instrument charging failure to register must allege that such notice was given.
(i) The Failure-to-Register Statute
Any analysis of the question whether a particular statute creates a strict liability crime should begin with the actual language of the statute. The failure-to-register statute that defendant Patterson is charged with violating is set out in Correction Law § 168-t. The statute provides:
“Failure to register or verify; penalty
“Any sex offender required to register or to verify pursuant to the provision of this article who fails to register or verify in the manner and within the time periods provided for herein shall be guilty of a class A misdemeanor upon conviction for the first offense, and upon conviction for a second or subsequent offense shall be guilty of a.class D felony. Any such failure to register or verify may also be the basis for revocation of parole pursuant to section two hundred fifty-nine-i of the executive law or the basis for revocation of probation pursuant to article four hundred ten of the criminal procedure law.”
*527 (ii) Does Correction Law § 168-t, the “Failure-to-Register” Statute, Create a Strict Liability Crime?
Penal Law § 15.10 explains the difference between strict liability crimes and crimes of mental culpability under New York law, and further sets forth the minimal requirement in this regard for criminal liability. It provides: “The minimal requirement for criminal liability is the performance by a person of conduct which includes a voluntary act or the omission to perform an act which he is physically capable of performing. If such conduct is all that is required for commission of a particular offense, or if an offense or some material element thereof does not require a culpable mental state on the part of the actor, such offense is one of ‘strict liability.’ If a culpable mental state on the part of the actor is required with respect to every material element of an offense, such offense is one of ‘mental culpability.’ ”
Penal Law § 15.05 in turn defines the various culpable mental states utilized in the Penal Law, namely, to act (or fail to act) “intentionally,” “knowingly,” “recklessly,” or with “criminal negligence.”
None of these mental states is expressly required by the statutory definition of the crime of failure to register contained in Correction Law § 168-t. For example, section 168-t does not provide that any person who “knowingly fails to register” or “intentionally fails to register” as a sex offender is guilty of a crime. Rather, section 168-t makes no express reference to any culpable mental state. By its terms, the statute applies instead to any person who “fails to register or verify” as required, without regard to that person’s mental state. Thus, at least at first blush, failure to register appears to be an offense of strict liability as defined by Penal Law § 15.10 — that is, an offense that does not require a culpable mental state on the part of the defendant.
However, Penal Law § 15.15 (2) further provides that the fact that the statutory definition of a given crime does not expressly require a culpable mental state does not necessarily mean that the crime is a strict liability offense. Rather — even when the statutory definition of a crime does not expressly require a culpable mental state — proof of a culpable mental state must nevertheless be presented by the People if, as a logical matter, the crime “necessarily involves” such a mental state. Thus Penal Law § 15.15 (2) provides: “Although no culp *528 able mental state is expressly designated, in a statute defining an offense, a culpable mental state may nevertheless be required for the commission of such offense, or with respect to some or all of the material elements thereof, if the proscribed conduct necessarily involves such culpable mental state. A statute defining a crime, unless clearly indicating a legislative intent to impose strict liability, should be construed as defining a crime of mental culpability. This subdivision applies to offenses defined both in and outside this chapter.” (Emphasis added.)
Accordingly, although the statutory definition of failure to register set out in Correction Law § 168-t does not expressly require any culpable state, a culpable mental state may nevertheless be required for that crime if the conduct proscribed by section 168-t “necessarily involves” such a mental state.
Defendant, relying on the holding of People v Manson (173 Misc 2d 806, supra), argues in substance that the crime of failure to register “necessarily involves” both “knowing” and “intentional” conduct, and that the People should therefore be required in any prosecution under section 168-t to both plead and prove that defendant’s failure to register was both “knowing” and “intentional.”
This court disagrees. There is nothing about the definition of the crime of failure to register under SORA that “necessarily involves” intentional conduct. It is easy to imagine any number of circumstances where a defendant might fail to register as a sex offender without consciously intending to violate the law. For example, if a sex offender were to move to another State or country, he might mistakenly believe he is no longer obligated to register or verify his address. Similarly, a careless sex offender might simply forget about his registration obligation after a number of years have passed. In such circumstances, the defendant would have committed acts that fall within the statutory definition of the crime of failure to register under section 168-t, and yet there is no good reason to suppose that such violations of the statute “necessarily involved” intentional misconduct.
CPL 15.15 (2) also states that a statute defining a crime should be construed as defining a crime of mental culpability unless the statute clearly indicates a legislative intent to impose strict liability. Section 168-t does clearly indicate a legislative intent to impose' strict liability. This intent is evidenced first and foremost by the actual language of the statute, and in particular by the use of the word “fail” in section 168-t.
*529 As noted in Manson (supra), SORA’s various provisions contain slightly different formulations in order to refer to sex offenders who do not comply with the statute’s various requirements. In particular, section 168-g — which governs the registration of offenders already on probation or parole on the effective date of the statute — speaks of offenders who either “fail[ ] or refuse [ ] ” to comply with their registration obligations. (Correction Law § 168-g [2] [emphasis added]; People v Manson, 173 Misc 2d, at 813-814.)[4] By way of contrast, section 168-t — the statute that actually defines and prohibits the crime of failure to register — by its terms applies to any offender who simply “fails” to register in the manner required; section 168-t contains no reference to the words “refuse” or “refusal.”
There is an important difference between the word “fail” and the word “refuse.” The term “refuse” connotes a higher degree of mental culpability than does the term “fail.” (See, People v Anyakora, 162 Misc 2d 47, 52 [Sup Ct, NY County 1993], affd 238 AD2d 216 [1st Dept 1997], lv denied 90 NY2d 854 [1997].) “ ‘ “Fail” is distinguished from “refuse” in that “refuse” involves an act of the will’ (Black’s Law Dictionary 1282 [6th ed 1990]). ‘Fail’ means ‘involuntarily to fall short of success’ * * * ‘ “[R]efusal” implies the positive denial of an application or command, or at least a mental determination not to comply.’ ”
It is evident that the Legislature that enacted SORA understood that there is a significant difference between the words “fail” and “refuse.” Otherwise, the language in section 168-g (2) about a sex offender who either “fails or refuses” to register would be redundant. It therefore follows that the Legislature made a deliberate decision to use the word “fail” and not to use the word “refuse” when the Legislature defined the crime of failure to register in section 168-t.
The deliberate choice of the word “fail,” rather than the word “refuse,” in section 168-t shows that it was the Legislature’s intention to cast as broad a net as reasonably possible in defining the crime of failure to register as a sex offender. If the Legislature had elected in section 168-t to prohibit a “refusal” to register, then there would be a strong argument that the statute was limited to deliberate, conscious disobedience of the *530 registration requirement. Similarly, if the Legislature had intended to prohibit only an “intentional” or “knowing” failure to register, then the Legislature would have used those terms in section 168-t. But because section 168-t by its terms instead applies to a sex offender who merely “fails” to register — without any express requirement of knowledge or intent — it is clear that the Legislature intended to create and did create a strict liability crime. (See, People v Coe, 71 NY2d 852, 855 [1988]; People v Anyakora, supra [Public Health Law § 2805-b (2) (a), which provides that a hospital that “fails” to provide emergency medical care to person in need of treatment is guilty of a misdemeanor, creates a strict liability crime]; see also, People v DiLorenzo, 154 Misc 2d 485, 488 [Grim Ct, Bronx County 1991] [lack of a scienter requirement for some offenses defined by a statute and inclusion of a culpable mental state for others is a “distinct indication” that Legislature intended first group to be strict liability offenses].)
It is true that strict liability is generally disfavored in criminal law, and particularly so for traditional criminal offenses that have their origins in the common law. (See, Staples v United States, 511 US 600 [1994]; United States v United States Gypsum Co., 438 US 422 [1978]; Morissette v United States, 342 US 246 [1952].)
SORA deals with convicted sex offenders and is therefore obviously closely related to the administration of the criminal law. But SORA is not a traditional criminal statute aimed primarily at punishing wrongdoing. Rather, as expounded at length in Doe v Pataki (120 F3d 1263 [2d Cir 1997], cert denied 522 US 1122 [1998], supra), SORA is in essence a regulatory statute. It proceeds from a legislative finding that convicted sex offenders exhibit heightened rates of recidivism and that sex offenders therefore present a special danger to the public and, in particular, to vulnerable women and children. SORA is thus primarily intended as a measure to foster public safety. (See, Doe v Pataki, supra, at 1276-1279; People v Stevens, 91 NY2d 270, 274-275 [1998], supra.)
Viewed in the light of the important public safety concerns that are at the heart of SORA, the Legislature’s decision to impose strict liability for failure to register was altogether appropriate and consistent with precedent. The power of a Legislature to enact a criminal statute imposing strict liability for an essentially regulatory offense involving the public safety, health or welfare has long been recognized. (Morissette v United States, 342 US, supra, at 253-256; United States v Freed, 401 *531 US 601, 607 [1971]; United States v Balint, 258 US 250 [1922]; People v Werner, 174 NY 132 [1903]; see generally, United States v Figueroa, 165 F3d 111, 114-117 [2d Cir 1998].) In dealing with such offenses, the urgent public interest in protecting the community’s welfare “ ‘may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.’ ” (People v Dozier, 72 AD2d 478, 485 [1st Dept], affd 52 NY2d 781 [1980], quoting Shevlin-Carpenter Co. v Minnesota, 218 US 57, 70 [1910].)
Moreover, New York law also recognizes that once a person enters the criminal justice system, it is appropriate to place special responsibilities upon that person and to impose strict liability for any violation of those responsibilities. Thus the crime of bail jumping is a strict liability crime for which no mens rea is required. (See, People v Eiffel, 81 NY2d 480 [1993]; People v Mitchell, 196 AD2d 401 [1st Dept 1993]; People v McMillian, 174 AD2d 759 [2d Dept 1991].) Bail jumping is similar to failure to register in that each crime involves the violation of a duty imposed upon the defendant by virtue of the defendant’s status as a litigant before the State’s criminal courts. In the case of bail jumping, defendant’s duty is to appear in court when required. In the case of failure to register, defendant’s duty is to register after being convicted of a sex offense. In the bail jumping statute the Legislature has already provided that, in an appropriate case, a defendant (who has merely been accused of a crime) can be charged with the class D felony of bail jumping in the first degree (Penal Law § 215.57) if he fails to appear in court when required, without any showing that defendant’s failure was knowing or intentional. (People v Eiffel, supra.) Thus it would certainly appear to be appropriate for the Legislature to similarly provide in SORA that a previously convicted sex offender can be charged with failure to register if he fails to register as required, again without a showing that the offender’s failure was knowing or intentional.
In sum, when taken together (1) the language used in SORA, (2) an examination of SORA’s underlying purposes, and (3) an understanding of the general principles of law concerning the appropriate circumstances for the creation of strict liability crimes, all lead this court to conclude that failure to register is a strict liability crime.
*532 (iii) Requirement of Notice
The imposition of strict liability for failure to register is not so harsh as it might appear at first. That is so because SORA requires that an offender must be given notice of his obligation to register.
SORA sets forth in considerable detail how the members of each potential class of sex offenders subject to the Act’s registration obligations must be expressly notified of their registration obligations. Thus, Correction Law § 168-d in substance mandates that the court must advise a newly convicted sex offender of his registration obligations at the time of the offender’s conviction. Section 168-e similarly requires in substance that the correctional facility where a sex offender is confined must notify the offender of his registration obligations at the time the offender is released from prison. And section 168-g (3) provides that for every offender already on probation or parole as of SORA’s effective date, it is the duty of that offender’s probation or parole officer to inform the offender of his registration obligations.
These notice requirements are in turn built into section 168-t’s definition of the crime of failure to register. More specifically, section 168-t by its terms applies only to a person “required to register * * * pursuant to the provision of this article who fails to register * * * in the manner and within the time periods provided for herein” (emphasis added). The statutory definition of failure to register thus presupposes and requires that the offender be given notice of his registration obligations as mandated by the statute’s notice provisions. If the appropriate governmental authority fails to give an offender notice of his registration obligation as required by SORA, then the offender cannot properly be said to have failed to register “in the manner” and “within the time periods provided for herein.” That is so because “the manner” and “the time periods provided for” in SORA begin with the statutorily mandated notice to the offender of his registration obligations.
SORA’s notice requirement is important for constitutional reasons. It is, of course, a presumption “deeply rooted in the American legal system” that “ignorance of the law or a mistake of law is no defense to criminal prosecution.” (Cheek v United States, 498 US 192, 199 [1991].) But it is equally true that due process of law requires that a citizen be given fair warning that a particular activity is proscribed by law before that citizen can be convicted for violating that law. (See, United States v Meade, 175 F3d 215, 225 [1st Cir 1999]; United States v Robinson, 137 F3d 652, 653-654 [1st Cir 1998].)
*533 These two sometimes competing principles (see, Liparota v United States, 471 US 419, 434-443 [1985] [White, J., dissenting]) have come into conflict before in connection with statutes bearing some resemblance to SORA. Long ago in the mid-twentieth century, many jurisdictions in the United States enacted broad criminal registration statutes. These statutes required previously convicted criminals to register with the police upon entering a given city or town. (See, Note, Criminal Registration Ordinances: Police Control Over Potential Recidivists, 103 U Pa L Rev 60, 65 [1954] [finding that in the year 1954 five States and 47 out of 246 American cities surveyed had enacted such statutes].) In Lambert v California (355 US 225 [1957], supra), the United States Supreme Court set aside one such statute on due process grounds because defendant had no fair notice of the registration statute and its requirements.
Lambert (supra) involved a Los Angeles Municipal Code Ordinance. The Ordinance provided in substance that any convicted felon who came to Los Angeles for a period of five or more days was required to register with the police department, and further provided that any felon who failed to so register was guilty of a criminal offense. The Supreme Court noted that criminal liability under the Ordinance could attach when the defendant’s only activity was merely to be present in Los Angeles. The Lambert Court reasoned (at 229) that the concept of fair warning or notice that is an important part of due process of law required that “actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance” could be had. “Were it otherwise, the evil would be as great as it is when the law is written in print too fine to read or in a language foreign to the community.” (355 US, at 230.)
SORA is far more narrowly drawn than the general criminal registration ordinance struck down in Lambert (supra). But the principle that due process requires fair notice still holds true. Under Lambert, it is not necessary that the government prove that a convicted criminal has actual knowledge of his duty to register. But it is necessary that at least “proof of the probability of such knowledge” be presented. SORA’s notice requirements — which mandate that each and every offender subject to the Act must be personally notified of his registra *534 tion obligations — more than satisfy this standard.[5] Thus, by mandating that the government must give a sex offender express notice of his registration obligation before the offender can be prosecuted for failure to register, section 168-t complies with the constitutional requirement of due process.
In sum, SORA strikes a careful balance between defendant’s due process rights and the community’s interest in protecting its most vulnerable citizens from truly terrible crimes. On the one hand, in the interests of fairness, SORA provides that a sex offender cannot be guilty of the crime of failure to register unless the offender was first given notice of his registration obligation. On the other hand, SORA imposes strict liability. Thus a sex offender will not be able to defeat a prosecution for failure to register simply by claiming that he did not know about SORA, or that he unintentionally overlooked its requirements, or that he had adopted some privately held interpretation of the statute under which he was not required to register. (See, Hamling v United States, 418 US 87, 123-124 [1974] [“To require proof of a defendant’s knowledge of the legal status of the materials (mailed in contravention of statute) would permit the defendant to avoid prosecution by simply claiming that he had not brushed up on the law”].)
In other words, SORA provides that the offender must be given notice of his registration obligations, but that once such notice is given the burden of compliance rests squarely on the offender. This approach is consistent with the leading authorities in this area of the law which have recently been aptly summarized as follows: “[SJtatutes defining public welfare offenses should be read to require only so much knowledge as is *535 necessary to provide defendants with reasonable notification that their actions are subject to strict regulation. In such cases * * * [the Legislature] is presumed to have placed the burden on defendants who have received such notice to ‘ascertain at [their] peril whether [their conduct] comes within the inhibition of the statute.’ ” (United States v Figueroa, 165 F3d 111, 116-117 [2d Cir 1998, Sotomayor, J.], supra, quoting United States v Balint, 258 US 250, 254, supra.)
Conclusion
Bronx County does have geographical jurisdiction over this case pursuant to the “injured forum” statute. Failure to register under SORA is a strict liability crime. There is no requirement that the People allege that defendant Patterson acted knowingly or intentionally. However, the People are required to plead and later prove that defendant was given notice of his duty to register.
Measured against this standard, the complaint against defendant Patterson is clearly sufficient because the complaint alleges first that defendant was provided with and signed a SORA form that expressly notified him of his registration obligation, and second that defendant thereafter failed to register.
Defendant’s motion to dismiss is denied.

. The Sex Offender Registration Act, Correction Law §§ 168 through 168-v, became law in 1996. The background and operation of the statute have been discussed and ably summarized in numerous decisions, including Doe v Pataki (120 F3d 1263 [2d Cir 1997], cert denied 522 US 1122) and People v Stevens (91 NY2d 270 [1998]). In the interest of brevity, this decision assumes familiarity with these matters.

. There are a number of apparent problems with the complaint herein that were not raised by defendant in his current motion papers and not addressed by the People in their motion response. Accordingly, this decision is limited to the issues raised by defendant in his present motion to dismiss.

. According to the People’s motion response, it was not and is not possible for defendant to register in the Bronx. Any offender in any of the five boroughs of New York City who attempts to register will be directed to the Sex Offender Monitoring Unit in Manhattan.

. More specifically, Correction Law § 168-g (2) provides in substance in relevant part that any sex offender already on probation on January 21, 1996 who “fails or refuses to [register] shall he subject to the same penalties * * * which would be imposed upon a sex offender who fails or refuses to comply with the provision of this article on or after such effective date.” (Emphasis added.)

. It might be argued that SORA’s failure-to-register provision would pass constitutional muster under Lambert (supra) even in the absence of SORA’s notice provisions.
Part of the difficulty with the historical general criminal registration statutes like the Los Angeles Ordinance at issue in Lambert (supra) was that they were, for the most part, local laws enacted in scattered American cities and towns. Thus it was difficult to say that a convicted criminal who was moving about the country would have fair warning that a particular town had such a law. (See, Note, op. cit., 103 U Pa L Rev, at 82-85.)
SORA is different. It is a State-wide law. Moreover, all 50 States have now adopted somewhat similar sex offender registration laws in order to meet the requirements of 42 USC § 14071, the Federal Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program. As time goes on and these State laws lose their novelty, it will be increasingly difficult to say that sex offenders do not have fair warning that sex offender registration laws exist, even in the absence of mandatory individual notice requirements like those set out in SORA.