People v Collier (2024 NY Slip Op 00246)

People v Collier

2024 NY Slip Op 00246

Decided on January 18, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: January 18, 2024

Before: Kern, J.P., Friedman, González, Shulman, JJ. 

Ind No. 24421C/09 Appeal No. 1483 Case No. 2015-1913 

[*1]The People of the State of New York, Respondent,
v
Roderick Collier, Defendant-Appellant.

Twyla Carter, The Legal Aid Society, New York (Ashley A. Baxter of counsel), for appellant.
Darcel D. Clark, District Attorney, Bronx (Noah J. Sexton of counsel), for respondent.

Order, Supreme Court, Bronx County (Raymond L. Bruce, J.), entered on or about March 18, 2015, which adjudicated defendant a level one sex offender pursuant to the Sex Offender Registration Act (SORA) (Correction Law art 6-C), unanimously affirmed, without costs.
Article 6-C of the Correction Law sets forth the time frame according to which the State is to commence and conduct SORA proceedings, including the prescription that the court shall make its determination "thirty calendar days prior to [the offender's] discharge, parole or release" (Correction Law § 168-n[2]). Correction Law § 168-l(8), however, states that "[a] failure by a state or local agency or the board to act or by a court to render a determination within the time period specified in this article shall not affect the obligation of the sex offender to register or verify under this article nor shall such failure prevent a court from making a determination regarding the sex offender's level of notification and whether such offender is required by law to be registered for a period of twenty years or for life." Notwithstanding this statutory flexibility, it is well established that an offender's due process rights are violated when a delay is "so outrageously arbitrary as to constitute gross abuse of governmental authority" (People v Meyers, 16 Misc 3d 115, 118 [App Term, 2d Dept 2007]; see also People v Wilkes, 53 AD3d 1073, 1074 [4th Dept 2008], lv denied 11 NY3d 710 [2008]). Defendant contends that the nearly six-year delay between his release and his SORA hearing violated due process.
This Court has not had occasion to enumerate the factors to be considered in determining whether a delay in a SORA proceeding is "outrageously arbitrary." Based on consideration of the question and examination of relevant case law, we find that a court should consider (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant was on notice of the SORA registration requirement; and (4) whether the defendant was prejudiced by the delay.
We note that we do not include among the relevant factors either the nature of the underlying charge, which is recognized as a factor in the analogous context of a constitutional speedy trial claim (see People v Taranovich, 37 NY2d 442, 445 [1975]), or the offender's risk of reoffense, as indicated by his adjudicated risk level, which defendant urges us to consider. (We note, in this regard, that while defendant was ultimately adjudicated a level one offender, the charges against him included rape in the first degree, and he admitted to conduct constituting that crime at his plea hearing.) As to the nature of the underlying crime, Taranovich teaches that this is a relevant factor in the context of a constitutional speedy trial claim because "[u]pon such a serious charge, the District Attorney may be expected to proceed with far more caution and deliberation than he would expend on a relatively minor offense" (id. at 446). That reasoning is inapplicable [*2]here. There is no reason to believe that, years after a conviction, the government is likely to require more time to prepare for a SORA hearing when the underlying charge was a particularly serious one.
An offender's risk of reoffense is also irrelevant here. A delay that is truly outrageously arbitrary for a level one offender is no less so for a level three offender.
Turning to the factors enumerated above, while nearly six years is a substantial delay in and of itself, Taranovich notably stated that "the extent or duration of the delay, is, of course, important inasmuch as it is likely that, all other factors being equal, the greater the delay the more probable it is that the accused will be harmed thereby" (id. at 445). Because, as discussed below, defendant was not harmed by the delay, the pure length of the delay is entitled to relatively less weight. Further, New York courts have, on at least two occasions, found that no due process violation occurred where the delay was commensurate with that here, and there was no finding that the defendant was responsible for it (see People v Martin, 119 AD3d 1385 [4th Dept 2014], lv denied 24 NY3d 906 [2014]; Meyers, 16 Misc 3d at 117-118).
The second factor — the reason for the delay — favors defendant. The record suggests that the delay resulted from inadvertence by the State, and that defendant bore no responsibility for it. Notably, though, Taranovich states that such an essentially "clerical" error "will not, in and of itself, be sufficient to warrant the drastic measure of dismissal," and that the inadvertent nature of the error weighs less heavily in defendant's favor than would "a deliberate attempt by the prosecution to hamper the [the offender] in the preparation of his defense" (37 NY2d at 446). This reasoning applies at least as forcefully here because "SORA is regulatory rather than criminal in nature and is not intended to serve as a form of punishment" (Wilkes, 53 AD3d at 1074), and thus "the due process protections required for a risk level classification proceeding are not as extensive as those required in a plenary criminal or civil trial" (Doe v Pataki, 3 F Supp 2d 456, 470 [SD NY 1998] [internal quotation marks omitted]).
With regard to the third factor — whether the defendant was on notice of the SORA registration requirement — it is clear that defendant was not explicitly advised of his obligation to register. However, where the question presented is whether a defendant was aware of an obligation to register, due process of law will be satisfied so long as there is "proof of the probability" that defendant had actual knowledge of that obligation (see Lambert v California, 355 US 225, 229-230 [1957]; People v Patterson, 185 Misc 2d 519, 533 [Crim Ct, Bronx County 2000]). Here, defendant, who was represented by counsel, was convicted of a sex offense, which automatically made him a sex offender, and was specifically advised by the court that a significant sex offender fee — $1000[*3]— was being imposed on him. Further, the obligation of sex offenders to register is widely known. Under these circumstances, we conclude that it is more likely than not that defendant had actual knowledge of the registration requirement.
Finally, there is no indication in the record that defendant was prejudiced by the delay. He does not claim that he lost access to a relevant witness (see Taranovich, 37 NY2d at 447) or that he was otherwise impaired in presenting his case at the SORA hearing. Indeed, defendant materially benefitted from the delay. Based on his six-year period of release without reoffending, the court rejected the Board's assessment of 15 points under Factor 14 (Supervision). This reduced defendant's risk level from level two to level one. Substantive due process "centrally concerns the fundamental fairness of government activity" (Quill Corp. v North Dakota, 504 US 298, 312 [1992]). The absence of any harm to defendant weighs strongly against the conclusion that defendant's adjudication as a sex offender was fundamentally unfair or that the delay that preceded the adjudication was outrageously arbitrary. As in Taranovich, the absence of prejudice "is most critical in view of the facts of this particular case" (37 NY2d at 446). Accordingly, defendant was not deprived of due process.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: January 18, 2024