Docket No. 100054.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v.
DENNIS MOLNAR, Appellee.

*Opinion filed October 5, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the
court, with opinion.

Justices Freeman, Fitzgerald, Kilbride, Garman, and
Karmeier concurred in the judgment and opinion.

Justice Burke took no part in the decision.

**OPINION**

At issue in this case is the constitutionality of section 7 of the Sex Offender Registration Act (the Registration Act) (730 ILCS 150/7 (West 2002)) and section 1280.40 of the Illinois Administrative Code (the Code) (20 Ill. Adm. Code §1280.40 (2002)). Those sections provide that the Department of State Police shall extend a sex offender's registration period by 10 years if the offender violates any provision of the Registration Act (730 ILCS 150/1 *et seq.* (West 2002)). The circuit court of Cook County held those sections facially unconstitutional and unconstitutional as applied. The State has appealed directly to this court (134 Ill. 2d R. 603; 188 Ill. 2d R. 604(a)).

## BACKGROUND

The Registration Act was enacted in 1986 and originally was titled the Habitual Child Sex Offender Registration Act (Ill. Rev. Stat. 1987, ch. 38, par. 221 *et seq.*). The Registration Act was passed "in response to concern over the proliferation of sex offenses against children." *People v. Adams*, 144 Ill. 2d 381, 386 (1991). By requiring sex offenders to register with local law enforcement agencies, "the legislature sought to create an additional method of protection for children from the increasing incidence of sexual assault and sexual abuse." *Adams*, 144 Ill. 2d at 387. The Registration Act was designed to aid law enforcement agencies by allowing them to "monitor the movements of the perpetrators by allowing ready access to crucial information." *Adams*, 144 Ill. 2d at 388.

In 1993, the title of the Registration Act was amended to the Child Sex Offender Registration Act. 730 ILCS 150/1 *et seq.* (West 1994). The Registration Act again was amended and expanded in 1996 to include enumerated sex offenses against adult victims, as well as certain sexual and nonsexual offenses against child victims. At that time, the Registration Act was renamed the Sex Offender Registration Act. 730 ILCS 150/1 *et seq.* (West 1996).

Pursuant to the Registration Act, all persons who are sex offenders as set forth in section 2 (730 ILCS 150/2 (West 2002)) are required to register in person with municipal or county law enforcement officials within 10 days of establishing a residence in that municipality or county. 730 ILCS 150/3 (West 2002). The Registration Act provides that the person registering shall provide positive identification and documentation that substantiates proof of residence at the

registering address. 730 ILCS 150/3(c)(5) (West 2002). In addition, a sex offender who has not been adjudicated sexually dangerous or sexually violent and is required to register under the Registration Act "shall report in person to the appropriate law enforcement agency with whom he or she last registered within one year from the date of last registration and every year thereafter." 730 ILCS 150/6 (West 2002). Further, "[i]f any person required to register under [the Registration Act] changes his or her residence address, place of employment, or school, he or she shall, in writing, within 10 days inform the law enforcement agency with whom he or she last registered of his or her new address, change in employment, or school and register with the appropriate law enforcement agency within the time period specified in Section 3" of the Registration Act. 730 ILCS 150/6 (West 2002). Registration as required by the Registration Act consists of a statement in writing signed by the registrant providing the information required by the Department of State Police. 730 ILCS 150/8 (West 2002). That information includes a photograph of the registrant and may include his fingerprints. 730 ILCS 150/8 (West 2002). The registering law enforcement agency shall forward any required information to the Department of State Police and shall enter the information into the Law Enforcement Agencies Data System (LEADS). 730 ILCS 150/8 (West 2002).

The Department of State Police is the agency responsible for implementing the Registration Act. See 730 ILCS 150/4 (West 2002); 20 ILCS 2605/2605–35(a)(8) (West 2002). Accordingly, the Registration Act provides that the Department of State Police must send a nonforwardable verification letter annually to each re-registering sex offender "beginning one year from the date of his or her last registration." 730 ILCS 150/5–10 (West 2002). The re-registering sex offender must complete, sign and return the verification letter, postmarked within 10 days after the mailing of the letter, to the Department of State Police. 730 ILCS 150/5–10 (West 2002).

Defendant became subject to the Registration Act on November 12, 1992, when he was convicted of criminal sexual assault of a family member where the victim was under the age of 18. Ill. Rev. Stat. 1991, ch. 38, par. 12–13(3). Defendant was

sentenced to four years' probation. Defendant was required to register annually as a sex offender for a period of 10 years from the date of his conviction, until November 12, 2002.[1]

On July 1, 1999, within defendant's original 10-year registration period, modifications to the Registration Act became effective that provided the "Director of State Police, consistent with administrative rules, shall extend for 10 years the registration period of any sex offender *** who fails to comply with the provisions of this Article." 730 ILCS 150/7 (West 2000). The Administrative Code also was amended to provide that "[f]ailure to comply with any provision of the Act shall extend the period of registration by ten years beyond the period otherwise required." 20 Ill. Adm. Code §1280.40(a) (2000). The Department of State Police sent an official notice to every registered sex offender's last known address summarizing the 1999 changes to the Registration Act, including the fact that the failure to comply with any provision of the Registration Act would extend the time required to register by an additional 10 years and that the Department of State Police would administer extensions of the registration period. The official notice also stated that failure to comply would result in immediate enforcement action and prosecution. In addition, the notice explained that it is a Class 4 felony to fail to comply with the Registration Act, punishable by up to three years' incarceration and a minimum $500 fine. The official notice provided a telephone number so that the sex offender could

---

[1]Sexual predators, sexually dangerous persons and sexually violent persons, as defined by the Registration Act, are required to register for life. 730 ILCS 150/7 (West 2002). Any other person required to register under the Registration Act is required to register for a period of 10 years. 730 ILCS 150/7 (West 2002). Defendant fell within the latter category for purposes of the Registration Act.

contact the Illinois State Police Sex Offender Registration Unit if he had any questions concerning his responsibilities under the Registration Act.

On December 31, 2003, the Crestwood police arrested defendant and charged him with failing to register a change of address within 10 days of moving. Defendant also was charged with knowingly giving a false address in his re-registration. Defendant thereafter filed a "Motion for Judicial Determination that there is No Probable Cause to Detain and to Dismiss Complaints for Preliminary Examination." At the hearing on defendant's motion, the State and defendant stipulated to the testimony of their witnesses, although the parties disputed the facts culminating in defendant's arrests.

The parties agreed that defendant registered with the Crestwood Police Department as a sex offender living at 5419 W. 129th Street in Crestwood, Illinois, on September 10, 1999, and signed and initialed the registration form provided by the Department of State Police.[2] The registration form notified defendant of his duties under the Registration Act. The specified duties included: notifying the law enforcement agency with whom defendant last registered, in writing, within 10 days of changing his residence address; and renewing his registration in person with the law enforcement agency having jurisdiction, one year from the date of the initial registration and every year thereafter for a period of 10 years. The registration form also warned that failure to comply with the Registration Act is a Class 4 felony and that giving false registration information also is a Class 4 felony. Defendant's signature indicated that he had read the provisions of the registration form and understood his duty to register, as well as the fact that failure to register is a criminal offense.

Defendant also stipulated that he received the letter sent out by the Department of State Police in 1999 explaining the changes to the Registration Act, including the amendment providing that failure to comply with any provision of the

---

[2]The record is devoid of information concerning defendant's registrations for the years 1992 through September 10, 1999.

Registration Act would extend the time required to register by 10 years. In addition, defendant stipulated that he was aware of his reporting procedures under the Registration Act.

The parties stipulated that the Crestwood police department's sex offender registration forms are sent to the Blue Island, Illinois, dispatch, where the forms are maintained. Defendant claimed that he also properly registered with the Crestwood police department in 2000 and 2001. The parties stipulated that the Crestwood police officers sent, and the Blue Island dispatch recorded, registration forms for defendant on September 10, 1999, January 5, 2002, February 19, 2003, December 31, 2003, and February 27, 2004. No other registration forms were filed.

Defendant stipulated that he registered with Detective Carr of the Crestwood police department on January 5, 2002, listing a new address of 14021 South Kilpatrick in Crestwood. On that date, defendant signed and initialed provisions in the registration form indicating that he had read the provisions in the form. Included within the form were provisions stating that failure to comply with the provisions of the Registration Act or willfully providing false information are Class 4 felonies, and that failure to comply with any of the provisions of the Registration Act would cause the Department of State Police to administratively extend the term of registration by 10 years. When defendant registered on January 5, 2002, the Department of State Police extended defendant's registration by 10 years pursuant to section 7 of the Registration Act (730 ILCS 150/7 (West 2002)). The parties stipulated that Detective Carr would testify that he did not personally inform defendant on January 5, 2002, that he had been administratively extended.

The parties stipulated that the Crestwood police officers would testify that defendant did not register on his required date in January 2003. The parties stipulated that defendant next registered with the Crestwood police department on February 19, 2003, again initialing provisions notifying him that a violation of the Registration Act would result in a 10-year administrative extension and that a violation of the Registration Act was a Class 4 felony. On this date, the Department of State

Police again extended defendant's registration by 10 years pursuant to section 7 of the Registration Act and section 1280.40 of the Code.[3] The parties stipulated that on February 19, 2003, defendant was not specifically told that his registration had been extended.

Defendant next registered on December 31, 2003, listing a new address of 5744 W. 128th Street in Crestwood. Defendant had been living at the new address for more than five months. The Crestwood police therefore charged defendant with failing to register a change of address within 10 days of moving. Defendant also was charged with knowingly providing a false address when registering as a sex offender.

In his motion, defendant claimed that he had registered as a sex offender pursuant to the Registration Act and continued to do so until his 10-year registration period had expired in November of 2002, including the years 1999, 2000, 2001 and 2002. Defendant claimed that, at the end of 2002, after his registration period had expired, defendant and his fiancee monitored the Cook County sheriff's sex offender Web site and discovered that defendant's name and picture still appeared on the Web site. Defendant and his fiancee went to the Crestwood police department on February 19, 2003, to find out why defendant's picture was still on the sex offender Web site. Defendant claimed that no explanation was given, so "out of caution" defendant again registered as a sex offender with the Crestwood police department. On that date, defendant was not arrested by the Crestwood police department, nor was defendant informed that his registration period had been

---

[3]Effective August 20, 2004, section 7 was amended to clarify that, "[t]he registration period for any sex offender who fails to comply with any provision of the Act shall extend the period of registration by 10 years beginning from the first date of registration after the violation." 730 ILCS 150/7 (West 2004).

extended for 10 years by the Department of State Police. According to defendant, he first learned his registration period had been extended when he was arrested and charged with violating the Registration Act.

Defendant argued that section 7 of the Registration Act and section 1280.40 of the Illinois Administrative Code are unconstitutional because those sections do not require the Department of State Police to notify a registrant that he allegedly has violated the Registration Act, do not provide for notice of any proceeding where a registrant's period for reporting could be extended, do not provide a registrant with notice of the alleged reasons for the extension or with an opportunity to appear and contest the extension, and do not provide the registrant with notification that his registration period had been extended.

The State argued that the evidence clearly showed that defendant was aware of his duties under the Registration Act and was aware that he would be extended for failure to comply with the Registration Act. The State asserted that the Registration Act provides notice that is sufficient for purposes of due process. In addition, the State clarified that if a sex offender wants to contest his extension, he can contact the Department of State Police and file a petition for relief pursuant to the administrative rules. See 20 Ill. Adm. Code §1200.30 (2002). Those rules state that, upon receiving a petition for relief, the Department of State Police will then investigate the circumstances surrounding the extension and can grant relief if warranted. 20 Ill. Adm. Code §1200.30(b) (2002). The Director can also schedule a fact-finding conference, where the offender could be represented by counsel. 20 Ill. Adm. Code §§1200.30(b), (c) (2002). If the offender does not obtain relief following the investigation or fact finding conference, he can then petition for a hearing before an administrative law judge. 20 Ill. Adm. Code §1200.30(e) (2002).

Following argument, the circuit court granted defendant's motion to dismiss. The circuit court noted that defendant's registration had been extended, without notice to defendant, on January 5, 2002, and on February 19, 2003. Defendant thereafter was arrested and charged with felonies arising from

the extensions. The circuit court rejected the State's argument that defendant had received at least implied notice when he registered with the Crestwood police and signed the registration form. The circuit court held that defendant had neither express nor implied notice of the fact of the extensions until after he was arrested, and had no actual notice of his felony liability. In addition, defendant's arrests and one of his extensions occurred only after defendant's original registration term had expired. The circuit court further noted that extensions and arrests did not follow every incident of noncompliance with the Registration Act.

In finding the Registration Act and the Code unconstitutional, the circuit court found this case indistinguishable from the United States Supreme Court's decision in *Lambert v. California*, 355 U.S. 225, 2 L. Ed. 2d 228, 78 S. Ct. 240 (1957), where the Supreme Court held that a California municipal ordinance imposing a registration requirement on convicted felons was unconstitutional as applied. The circuit court rejected the State's argument that the general information provided to sex offenders warning that they would be extended if they failed to register in compliance with the Registration Act was sufficient to provide actual notice under *Lambert.* The circuit court concluded that general warnings spoke only to potential extensions, but did not provide notice of the fact of the extension. Here, defendant was not told that he had been judged noncompliant with the Registration Act and was responsible for extended reporting. The circuit court found that defendant was not given actual notice, and the provisions of the Registration Act and the Code did not provide sufficient actual notice. Therefore, those provisions are facially unconstitutional and unconstitutional as applied.

In addition, the circuit court found the provisions of the Registration Act and the Code unconstitutional because the provisions are unconstitutionally vague in violation of the due process clause. The circuit court held that the discretion of the police to arrest or to extend a sex offender's registration is overly broad and lacks any guidance. The circuit court therefore granted defendant's motion. The circuit court thereafter denied the State's motion to reconsider.

ANALYSIS

As a preliminary matter, we note that although defendant claims that he did register as a sex offender in 2000 and 2001, defendant's motion to dismiss argued only that the complaints against him should be dismissed because section 7 of the Registration Act and section 1280.40 of the Code were facially unconstitutional and unconstitutional as applied. Accordingly, for purposes of our review, we will presume that the complaints filed against defendant properly charged defendant with violations of the Registration Act based upon his failure to register for the years 2000 and 2001. We turn, then, to the issue in this case, which is the constitutionality of section 7 of the Registration Act and section 1280.40 of the Code.

A statute's constitutionality presents a question of law. *In re Parentage of John M.*, 212 Ill. 2d 253, 265 (2004). Accordingly, we review the circuit court's decision declaring a statute unconstitutional *de novo*. *Parentage of John M.*, 212 Ill. 2d at 265. When analyzing the constitutionality of a statute on review, this court begins with the assumption that the statute is constitutional. *Parentage of John M.*, 212 Ill. 2d at 265. Similarly, administrative rules and regulations have the force and effect of law and, like statutes, are presumed valid. *Union Electric Co. v. Department of Revenue*, 136 Ill. 2d 385, 391 (1990). If reasonably possible, this court has an obligation to construe a statute in a manner that would uphold its constitutionality. *Parentage of John M.*, 212 Ill. 2d at 266. Likewise, this court has a duty to affirm the constitutionality of a rule or regulation, if reasonably possible, with any doubts resolved in favor of the validity of the challenged regulations. *Granite City Division of National Steel Co. v. Illinois Pollution Control Board*, 155 Ill. 2d 149, 164-65 (1993). The party challenging the validity of a statute has the burden of establishing the statute's constitutional infirmity. *Parentage of John M.*, 212 Ill. 2d at 266. Section 7 of the Registration Act, which is at issue in this appeal, provides, in pertinent part:

> "Any other person who is required to register under this Article shall be required to register for a period of 10 years after conviction or adjudication if not confined to a

penal institution, hospital or any other institution or facility, and if confined, for a period of 10 years after parole, discharge or release from any such facility. *** Liability for registration terminates at the expiration of 10 years from the date of conviction or adjudication if not confined to a penal institution, hospital or any other institution or facility *** *providing such person does not, during that period, again become liable to register under the provisions of this Article. The Director of State Police, consistent with administrative rules, shall extend for 10 years the registration period of any sex offender, as defined in Section 2 of this Act, who fails to comply with the provisions of this Article.*" (Emphasis added.) 730 ILCS 150/7 (West 2002).

Section 1280.40 of the Code provides, in pertinent part, that:

"A sex offender shall register in person annually within one year after his or her last registration. Failure to comply with any provision of the Act shall extend the period of registration by ten years beyond the period otherwise required." 20 Ill. Adm. Code §1280.40(a) (2002).

Finally, with regard to a penalty, the Registration Act provides that:

"Any person who is required to register under this Article who violates any of the provisions of this Article and any person who is required to register under this Article who seeks to change his or her name under Article 21 of the Code of Civil Procedure [735 ILCS 5/21–101 *et seq.*] is guilty of a Class 4 felony. Any person who is required to register under this Article who knowingly and willfully gives material information required by this Article that is false is guilty of a Class 3 felony. Any person convicted of a violation of any provision of this Article shall, in addition to any other penalty required by law, be required to serve a minimum period of 7 days confinement in the local county jail. The court shall impose a mandatory minimum fine of $500

for failure to comply with any provision of this Article." 730 ILCS 150/10 (West 2002).

As noted, the circuit court found the Registration Act and the Code unconstitutional facially and as applied under the Illinois and the federal due process clauses (Ill. Const. 1970, art. I, §2; U.S. Const., amend. XIV), because the provisions at issue do not provide sufficient actual notice to the defendant that he had been judged noncompliant and therefore was responsible for extended reporting. The circuit court did not distinguish the state due process clause and the federal due process clause in its order, and in fact relied upon federal case law in finding the due process violation in this case. Moreover, in the appeal to this court, neither party has argued that the state due process clause provides greater protection than that provided by the federal constitution. Thus, while it is true that this court may construe the Illinois due process clause independently of its federal counterpart, and in appropriate cases will interpret the state due process clause to provide greater protections (*Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 152 (2003)), we find no compelling reason to do so in this case. Accordingly, we will consider the circuit court's order in light of federal due process jurisprudence.

In finding a due process violation in this case, the circuit court found the facts of this case indistinguishable from those in *Lambert v. California*, 355 U.S. 225, 2 L. Ed. 2d 228, 78 S. Ct. 240 (1957). As a threshold matter, we note that, although the circuit court relied on *Lambert* in declaring the Registration Act and the Code both facially unconstitutional and unconstitutional as applied, *Lambert* was an as-applied case and did not address whether the ordinance at issue was unconstitutional on its face. However, because a finding that a statute is constitutional as applied will necessarily compel a finding that the statute is constitutional on its face, we will first address whether the circuit court correctly found that the Registration Act and the Code were unconstitutional as applied to defendant. See *People v. Huddleston*, 212 Ill. 2d 107, 145 (2004) (given determination that sentencing statute was constitutional as applied, it followed that the statute was constitutional on its face).

At issue in *Lambert* was a provision in the City of Los Angeles Municipal Code stating that "it shall be unlawful for 'any convicted person' to be or remain in Los Angeles for a period of more than five days without registering" with the chief of police. *Lambert*, 355 U.S. at 226, 2 L. Ed. 2d at 230, 78 S. Ct. at 242. A "convicted person" was defined as any person convicted of a felony, whether that conviction occurred in California or another state, if the offense would have been punishable as a felony if committed in California. *Lambert*, 355 U.S. at 226, 2 L. Ed. 2d at 230, 78 S. Ct. at 241-42. When the defendant, Virginia Lambert, was arrested on "suspicion of another offense," the police discovered that Lambert had been a resident of Los Angeles for more than seven years and, within that period, had been convicted of a felony offense, but had not registered with the chief of police, as required under the municipal code. *Lambert*, 355 U.S. at 226, 2 L. Ed. 2d at 230, 78 S. Ct. at 242. Lambert was convicted of failing to register in violation of the municipal ordinance. *Lambert*, 355 U.S. at 227, 2 L. Ed. 2d at 230, 78 S. Ct. at 242.

After the state courts rejected Lambert's claim that the municipal code denied her due process of law, the case was argued to the United States Supreme Court. The Supreme Court held that the registration provisions of the municipal code violated the due process requirement of the fourteenth amendment. *Lambert*, 355 U.S. at 227, 2 L. Ed. 2d at 231, 78 S. Ct. at 242. The Supreme Court acknowledged that it is well settled that " 'ignorance of the law will not excuse,' " but noted that the conduct at issue in the case was "wholly passive." *Lambert*, 355 U.S. at 228, 2 L. Ed. 2d at 231, 78 S. Ct. at 243. Violation of the ordinance was "unaccompanied by any activity whatever, mere presence in the city being the test." *Lambert*, 355 U.S. at 229, 2 L. Ed. 2d at 232, 78 S. Ct. at 243. The Supreme Court explained that:

> "Engrained in our concept of due process is the requirement of notice. Notice is sometimes essential so that the citizen has the chance to defend charges. Notice is required before property interests are disturbed, before assessments are made, before penalties are assessed. Notice is required in a myriad of

> situations where a penalty or forfeiture might be suffered for mere failure to act." *Lambert*, 355 U.S. at 228, 2 L. Ed. 2d at 231, 78 S. Ct. at 243.

The Supreme Court noted that, in the case before it, circumstances that might move a person to inquire as to the necessity of registration were completely lacking. *Lambert*, 355 U.S. at 229, 2 L. Ed. 2d at 232, 78 S. Ct. at 243. In addition, the ordinance at most was a law enforcement technique designed for the convenience of law enforcement agencies through which a list of the names and addresses of felons residing in a given community could be compiled. *Lambert*, 355 U.S. at 229, 2 L. Ed. 2d at 232, 78 S. Ct. at 243. The Supreme Court held that "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand." *Lambert*, 355 U.S. at 229, 2 L. Ed. 2d at 232, 78 S. Ct. at 243. Thus, where a person did not know of the duty to register and there was no proof of the probability of such knowledge, that person could not be convicted consistently with due process. *Lambert*, 355 U.S. at 229-30, 2 L. Ed. 2d at 232, 78 S. Ct. at 243-44. Because Lambert had no actual knowledge of the registration requirement and there was no probability of such knowledge, Lambert's conviction for violating the ordinance was reversed.

In the instant case, in response to the State's appeal, defendant argues that the circuit court's finding must be affirmed because the facts of this case are identical to *Lambert*. Defendant maintains that his conduct in this case was wholly passive, as there was no overt act or commission of an act that created liability. In addition, circumstances which might have moved defendant to inquire as to the necessity of registration were completely lacking.

We disagree with defendant and the circuit court that the facts of this case are indistinguishable from the facts in *Lambert*. Critical to the decision in *Lambert* was the Supreme Court's finding that circumstances that might move a person to inquire as to the necessity of registration were completely lacking. In *Lambert*, there was no evidence the defendant was ever informed in any manner that she had a duty to register.

˘14˘

Here, there was ample evidence that defendant had actual knowledge of the registration requirements. Defendant stipulated that he had actual knowledge of his duty to register annually as a sex offender for a period of 10 years from the date of his conviction. In addition, when registering, defendant signed and initialed the registration form that again notified him of his duties under the Registration Act, including the duty to register annually and to notify law enforcement within 10 days of changing his residence address. The registration form also notified defendant that a violation of any provision of the Registration Act would result in a 10-year extension of the registration period and would constitute a Class 4 felony. This was not a case where circumstances that might move defendant to inquire as to the necessity of registration were completely lacking.

The circuit court, however, found that the Registration Act and the Code do not provide sufficient notice because defendant was not given actual notice that his registration had been extended for 10 years for failing to comply with the Registration Act. The circuit court held that the statutory warning to sex offenders concerning extensions does not provide actual notice of the fact of extension, as required by due process. The circuit court found that, because defendant was not told he had been judged to be noncompliant pursuant to the Registration Act, and thus was responsible for registering for an additional 10 years, the Registration Act and the Code violate due process.

We disagree with the circuit court that due process requires a sex offender to receive actual notice that his registration has been extended for failing to comply with the Registration Act. A sex offender is on notice that his registration period shall be extended for failing to comply with the Registration Act. A sex offender in compliance with the Registration Act will never be subject to an extended registration term. We find that defendant had sufficient notice under the Registration Act that his failure to comply would result in a 10-year extension of his registration period.

As the State observes, it would jeopardize the entire purpose of the Registration Act if a defendant, having been

notified that he is under a continuing duty to register, can simply fail to register and can change his address without notifying authorities, then claim ignorance of the law in order to escape the consequences of his failure to register. The success of the Registration Act depends upon the compliance of sex offenders to timely register and to notify law enforcement authorities when they move. Given the state's interest in protecting the public against sex offenders, and the fact that a sex offender has notice that the failure to comply with the Registration Act will result in a 10-year extension of his registration, we find the Registration Act and the Code provide actual notice of a duty to register, or proof of the probability of such knowledge, sufficient to provide notice under *Lambert*. Those provisions, then, comply with due process as applied to defendant. Moreover, because we find the Registration Act and the Code to be constitutional as applied to defendant, it follows that those provisions also are facially constitutional.

Defendant, however, claims recent amendments to section 7 of the Registration Act demonstrate that the prior version of section 7 was unconstitutional as applied to defendant. Effective January 1, 2006, the extension portion of section 7 was amended to provide:

"The Director of State Police, consistent with administrative rules, shall extend for 10 years the registration period of any sex offender, as defined in Section 2 of this Act, who fails to comply with the provisions of this Article. The registration period for any sex offender who fails to comply with any provision of the Act shall extend the period of registration by 10 years beginning from the first date of registration after the violation. If the registration period is extended, the Department of State Police shall send a registered letter to the law enforcement agency where the sex offender resides within 3 days after the extension of the registration period. The sex offender shall report to that law enforcement agency and sign for that letter. One copy of that letter shall be kept on file with the law enforcement agency of the jurisdiction where the sex offender resides and one copy shall be returned to the

Department of State Police." 730 ILCS 150/7 (West Supp. 2005).

Defendant contends the legislature amended section 7 in response to the circuit court's order in this case, and that the amendments to section 7 now satisfy due process by providing a sex offender with notice of an extension.

Although defendant claims that the legislative action in amending section 7 demonstrates that the prior version of section 7 is unconstitutional as applied to defendant, defendant has cited no support for this argument other than the mere fact of the amendment. In fact, a review of the legislative history of Public Act 94–166, which amended section 7, refutes defendant's claim. The legislative debate with respect to House Bill 4030 (which became Public Act 94–166), reveals the purpose of the amendments to the Registration Act was to "require more extensive reporting requirements for persons convicted of certain sex offenses." 94th Ill. Gen. Assem., House Proceedings, April 13, 2005, at 88 (statements of Representative Brosnahan). Specifically, Representative Brosnahan explained that:

"Today, when a sex offender is released from custody, they're required to sign a notification form stating that they will register with local law enforcement and abide by their conditions. Under House Bill 4030, we're gonna add the employer's contact information to this form, saving valuable time when verification is conducted. The legislation will also highlight any extensions in the offender's registration period and it will include the reasons for any extension. Some of the reasons would be ... pick ... the offender picking up a new offense or violating a previous registration requirement. The registration form's [*sic*] also gonna be changed to require a statement from the child sex offender that they will lot [*sic*] ... they will not live in areas excluded by the original Registration Act which would be including locations within 500 feet of a school, park, or a day care facility. House Bill 4030 also provides that a sex offender who changes his or her address, place of employment, or school that they attend must report in

person rather than by mail to the local law enforcement agency where they are registered." 94th Ill. Gen. Assem., House Proceedings, April 13, 2005, at 88-89 (statements of Representative Brosnahan).

Nothing in the legislative history of Public Act 94–166 supports defendant's claim that the amendment to section 7 was in response to the circuit court's order in this case. The provision that the Director of State Police shall extend for 10 years the registration period of any sex offender who violates the Registration Act remains unchanged. In addition, we note that although the amendment to section 7 requires the Department of State Police to send a registered letter to the law enforcement agency where the sex offender resides within three days after the extension of the offender's registration period, the amendment does not provide that the local law enforcement agency must then ensure that the extension letter is delivered to the offender. Rather, the amendment provides that the *sex offender shall report* to the law enforcement agency and sign for that letter. As the State has argued, Public Act 94–166 was intended to increase the opportunity for in-person contact between local law enforcement and sex offenders. Consequently, we reject defendant's claim that the amendments to section 7 demonstrate that the prior version of section 7 was unconstitutional as applied to defendant.

The circuit court also found the Registration Act and the Code were unconstitutional because section 10 of the Registration Act authorizes a felony penalty for violating the Registration Act, an offense that requires no *mens rea*, or mental state. In support of its holding, the circuit court noted that, in *People v. Nunn*, 77 Ill. 2d 243, 249 (1979), this court held, "It would certainly be unreasonable to conclude that the legislature intended to subject a person to a severe penalty for an offense that he might unknowingly commit."

With regard to a penalty for violation, the Registration Act originally provided that "[a]ny person who is required to register under this Article who violates any of the provisions thereof is guilty of a Class A misdemeanor." Ill. Rev. Stat. 1987, ch. 38, par. 230. In 1996, the legislature increased the penalty for a first-time offender to a Class 4 felony. See Pub. Act 89–8, eff.

˅18˅

January 1, 1996 (amending 730 ILCS 150/10 (West 1996)). Six months later, the penalty provision of the Registration Act was again amended to provide that a violation of any provision of the Registration Act is a Class 4 felony. 730 ILCS 150/10 (West 1996). In 1998, section 10 was amended to also provide that "any person who knowingly or willfully gives material information required by this Article that is false" is guilty of a Class 4 felony. In addition, the 1998 amendment added a provision stating that, "[t]he court shall impose a mandatory minimum fine of $500 for failure to comply with any provision of this Article." 730 ILCS 150/10 (West 1998).

The penalty provision underwent additional revisions in 1999. The 1999 revisions increased the penalty for knowingly and willfully giving material information that is false from a Class 4 felony to a Class 3 felony. 730 ILCS 150/10 (West 2000). In 2004, the penalty for a violation of any of the provisions of the Registration Act also was increased from a Class 4 felony to a Class 3 felony. 730 ILCS 150/10 (West 2004). Finally, in 2006, section 10 was amended to provide that "[a]ny person who is convicted for a violation of this Act for a second or subsequent time is guilty of a Class 2 felony." 730 ILCS 150/10 (West Supp. 2005).

As noted, the circuit court held section 10 of the Registration Act, the penalty provision, created an absolute liability offense that was improperly subject to a felony penalty. Accordingly, we first must address whether the circuit court was correct that section 10 created an absolute liability offense.

When construing a statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. *People v. O'Brien*, 197 Ill. 2d 88, 90 (2001). This court will begin with the language of the statute, which must be given its plain and ordinary meaning. *O'Brien*, 197 Ill. 2d at 90. Where the language of the statute is clear and unambiguous, this court will apply the statute without resort to further aids of statutory construction. *O'Brien*, 197 Ill. 2d at 90-91. All the provisions of an enactment should be viewed as a whole. *O'Brien*, 197 Ill. 2d at 91. Words and phrases should not be construed in isolation, but must be interpreted in light of other

relevant statutory provisions. *O'Brien*, 197 Ill. 2d at 91. This court reviews questions of statutory interpretation *de novo*. *O'Brien*, 197 Ill. 2d at 91.

In determining whether section 10 of the Registration Act creates an absolute liability offense for a violation of the Registration Act, we consider the guidelines set forth by the legislature in section 4–9 of the Criminal Code of 1961 (720 ILCS 5/4–9 (West 2002)). Section 4–9 states:

> "A person may be guilty of an offense without having, as to each element thereof, one of the mental states described in Sections 4–4 through 4–7 if the offense is a misdemeanor which is not punishable by incarceration or by a fine exceeding $500, or the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." 720 ILCS 5/4–9 (West 2002).

Section 4–9 applies to all criminal penalty provisions, including those outside the Criminal Code of 1961. *People v. Gean*, 143 Ill. 2d 281, 285 (1991).

In *People v. Gean*, this court noted that the committee comments to section 4–9 reveal that the legislature intended to limit the scope of absolute liability, so absent a clear indication that the legislature intended to impose absolute liability, or an important public policy favoring absolute liability, this court has been unwilling to interpret a statute as creating an absolute liability offense. *Gean*, 143 Ill. 2d at 285-86, quoting *People v. Sevilla*, 132 Ill. 2d 113, 120 (1989). Consequently, the mere absence of language expressly describing a mental state does not *per se* lead to the conclusion that none is required. *Gean*, 143 Ill. 2d at 286, quoting *People v. Valley Steel Products Co.*, 71 Ill. 2d 408, 424 (1978).

In this case, defendant was charged with violating the Registration Act when he failed to notify law enforcement of a change in address, which was a Class 4 felony at the time. A Class 4 felony carries with it a sentence of not less than one year and not more than three years. 730 ILCS 5/5–8–1(a)(7) (West 2002). Defendant also was charged with knowingly and willfully giving false information for entry on his Sex Offender

Registration Form, which was a Class 3 felony. Because the charge of knowingly and willfully giving false information contains a mental state, we will limit our analysis to the charge of failing to notify law enforcement of a change in address. This charge alleged a violation of the first provision of section 10, which states that any person required to register under the Registration Act who violates any provision of the Registration Act is guilty of a Class 4 felony.

On its face, the portion of section 10 at issue does not require a culpable mental state. In addition, the offense is a felony punishable by incarceration and a minimum fine of $500. Consequently, in order to constitute an absolute liability offense, the Registration Act must indicate a legislative purpose to impose absolute liability for a violation of the Registration Act.

The legislative intent to impose absolute liability can be discerned from several sources. First, the plain language of section 10 provides for absolute liability. Second, a clear legislative purpose to impose absolute liability is evident upon reading section 10 in its entirety. While the first sentence of section 10 provides that "[a]ny person who is required to register under this Article who violates any of the provisions of this Article *** is guilty of a Class 4 felony," the next sentence states that "[a]ny person who is required to register under this Article *who knowingly or wilfully* gives material information required by this Article that is false is guilty of a Class 3 felony." Emphasis added. 730 ILCS 150/10 (West 2002). This court has noted that, "by employing certain language in one instance and wholly different language in another, the legislature indicates that different results were intended." *In re K.C.*, 186 Ill. 2d 542, 549-50 (1999). Thus, in *K.C.*, this court held that the fact that the legislature specifically included a mental state in one section, and specifically deleted the mental state from another section, supported a conclusion that the legislature intended to impose absolute liability in the provision where the mental state was absent. *K.C.*, 186 Ill. 2d at 550. To hold otherwise would render the "knowingly" language "meaningless surplusage." *K.C.*, 186 Ill. 2d at 550.

In accordance with *K.C.*, we must presume that, by specifically including a culpable mental state within the same statutory section, the legislature's omission of a culpable mental state in the first sentence of section 10 indicates that different results were intended. Were we to hold otherwise, the "knowingly and willfully" language in the second sentence of section 10 would be rendered "meaningless surplusage." Moreover, we observe that, since the enactment of the Registration Act, section 10 has been amended six times, yet the legislature has never added the word "knowingly" to the provision at issue. As discussed, this omission is particularly significant because the legislature did include the mental state of "knowingly or willfully" in the 1998 amendment to the statute which broadened the offense to include the act of "knowingly and willfully providing false information." Consequently, it appears that the legislature chose to require proof of culpability for certain acts and to dispense with this requirement for other violations, such as the violation at issue.

In so holding, we recognize that this court has held the possible punishment which can be imposed for the violation of a statute is an important factor in determining whether the statute is an absolute liability offense, so " 'where the punishment is great, it is less likely that the legislature intended to create an absolute liability offense.' " *Gean*, 143 Ill. 2d at 287, quoting *Sevilla*, 132 Ill. 2d at 122. Thus, in *Gean* we found a potential prison sentence of three years and a fine up to $10,000 was a substantial penalty that, given the lack of clear legislative intent, indicated the statutes at issue were not absolute liability offenses. *Gean*, 143 Ill. 2d at 288. Likewise, in *People v. Farmer*, 165 Ill. 2d 194 (1995), this court held that, given the substantial penalty for possessing contraband in a penal institution, ranging from a Class 4 felony to a Class X felony, and the lack of a clear legislative purpose, the statute at issue did not impose absolute liability. Nonetheless, despite the fact that the penalty in this case is a Class 4 felony, we find the legislature intended to create an absolute liability offense for violating the Registration Act.

In so holding, we find the analysis of the court in *People v. Patterson*, 185 Misc. 2d 519, 708 N.Y.S.2d 815 (2000), to be

well taken. In finding that the failure to register as a sex offender under New York's Sex Offender Registration Act (SORA) was a strict liability crime, the court stated as follows:

> "SORA deals with convicted Sex Offenders and is therefore obviously closely related to the administration of the criminal law. But SORA is *not* a traditional criminal statute aimed primarily at punishing wrongdoing. Rather, *** [citation] SORA is in essence a regulatory statute. It proceeds from a legislative finding that convicted sex offenders exhibit heightened rates of recidivism and that sex offenders therefore present a special danger to the public and, in particular, to vulnerable women and children. SORA is thus primarily intended as a measure to foster public safety. [Citations.]

> Viewed in the light of the important public safety concerns that are at the heart of SORA, the Legislature's decision to impose strict liability for Failure-to-Register was altogether appropriate and consistent with precedent. The power of a legislature to enact a criminal statute imposing strict liability for an essentially regulatory offense involving the public safety, health or welfare has long been recognized. [Citations.] In dealing with such offenses, the urgent public interest in protecting the community's welfare 'may require that in the prohibition or punishment of particular acts it may be provided that he who shall do them shall do them at his peril and will not be heard to plead in defense good faith or ignorance.' [Citation.]." (Emphasis in original.)
> *Patterson*, 185 Misc. 2d at 530-31, 708 N.Y.S.2d at 824.

We find that the analysis set forth in *Patterson* is equally applicable in this case. As the court in *Patterson* observed, the imposition of strict liability for failing to register was not as harsh as it first appeared, given that SORA required an offender to be given notice of his obligation to register. *Patterson*, 185 Misc. 2d at 532, 708 N.Y.S.2d at 825. Likewise, in this case, the Registration Act expressly requires an offender to be given notice of his obligation to register, to be reminded annually of his obligation to register, and to be given notice that

failure to comply with the Registration Act will result in a 10-year extension of the offender's registration and will constitute a Class 4 felony. As in *Patterson*, the notice requirements are "built into" the Registration Act's definition of the crime of failure to register. Consequently, the concern that a person might be subject to a severe penalty for an offense that he might unknowingly commit is not present in this case. Under the circumstances, then, we find that the circuit court erred in holding that, because the strict liability offense of violating the Registration Act was subject to a felony penalty, the statute was unconstitutional on its face and as applied.

Finally, we must address the circuit court's finding that the Registration Act and the Code violate the due process clause because those provisions are unconstitutionally vague. The circuit court held those provisions are unconstitutionally vague because the discretion of the police as to whether to arrest or to extend is overly broad and lacks any guidance.

A defendant can challenge a statue as unconstitutionally vague on its face or as applied to the defendant's actions. *People v. Einoder*, 209 Ill. 2d 443, 448 (2004). However, if a statute does not implicate the first amendment, a defendant must demonstrate that the statute was vague as applied to the conduct for which the party was being prosecuted. *People v. Bailey*, 167 Ill. 2d 210, 228 (1995). In its order, the circuit court did not clarify whether it found the Registration Act and the Code to be facially unconstitutional or unconstitutional as applied. In his brief, defendant maintains that the Registration Act and the Code are facially unconstitutional. However, because this case does not involve the first amendment, we will consider whether the circuit court correctly found that the Registration Act and the Code were unconstitutional as applied to this defendant.

In its order, the circuit court also did not clarify whether it had found the Registration Act and the Code unconstitutional in violation of the due process clauses of both the state constitution and the federal constitution. However, under either the United States Constitution or the Illinois Constitution, a statute is said to violate due process on the basis of vagueness only if the terms of the statute are so ill-defined "that the

ultimate decision as to its meaning rests on the opinions and whims of the trier of fact rather than any objective criteria or facts." *People v. Burpo*, 164 Ill. 2d 261, 265-66 (1995).

With regard to vagueness, then, due process is satisfied if: (1) the statute's prohibitions are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited; and (2) the statute provides sufficiently definite standards for law enforcement and triers of fact that its applications do not depend merely on their private conceptions. *People v. Warren*, 173 Ill. 2d 348, 356 (1996).

Based upon the foregoing, it is clear that, as applied to defendant, the Registration Act and the Code satisfy due process. The Registration Act and the Code are sufficiently definite, when measured by common understanding and practices, to give a person of ordinary intelligence fair warning as to what conduct is prohibited. The Registration Act and the Code clearly set forth defendant's duty to register, as well as his responsibilities in the event he changes his residence address. The Registration Act and the Code also clearly provide that if a sex offender violates any provision of the Registration Act, his registration term will be extended for 10 years and he will be subject to a Class 4 felony. Moreover, defendant stipulated that: he was aware of his reporting procedures under the Registration Act; he had read and signed the registration form which also set forth his duties under the Registration Act, as well as the penalties for failure to comply with the Registration Act; and he had received the letter sent out by the Department of State Police in 1999 explaining the changes to the Registration Act, including the fact that failure to comply with any provision of the Registration Act would extend the time required to register by 10 years. Defendant cannot claim that the statute's prohibitions did not give fair warning as to what conduct was prohibited.

The Registration Act and the Code also provide sufficiently definite standards for law enforcement and triers of fact so that its applications do not depend merely on their private conceptions. Section 7 of the Registration Act provides that "[t]he Director of State Police, consistent with administrative

rules, *shall extend for 10 years* the registration period of any sex offender" who fails to comply with the Registration Act. (Emphasis added.) 730 ILCS 150/7 (West 2002). As the State observes, this provision leaves no discretion to law enforcement. In addition, the Code specifically directs law enforcement on the administration of the Registration Act, including: ensuring that the offender reads and signs the Sex Offender Registration Form (20 Ill. Adm. Code §1280.30(c)(1) (2002)); specifying what information should be on the Sex Offender Notification Form (20 Ill. Adm. Code §1280.40(d) (2002)); specifying that the agencies of jurisdiction shall verify the address of the sex offender annually (20 Ill. Adm. Code §1280.30(c)(5) (2002)); specifying how to record a change of address (20 Ill. Adm. Code §1280.30(d) (2002)); specifying how to update LEADS to maintain accuracy in reporting contacts with a registrant (20 Ill. Adm. Code §§1280.30(c)(1), (c)(3), (d) (2002)); and specifying how long law enforcement must enforce the terms of the Registration Act (20 Ill. Adm. Code §1280.40(a) (2002)). As the State has argued, the Registration Act and the Code leave virtually no discretion to law enforcement and triers of fact concerning application of the Registration Act.

The circuit court, however, citing *Kolender v. Lawson*, 461 U.S. 352, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983), found the Registration Act and the Code unconstitutionally vague in light of the lack of notice to citizens and arbitrary enforcement. In his brief, defendant also argues that *Kolender* is dispositive, so that the circuit court's ruling must be affirmed. Defendant contends this case is similar to *Kolender* because: defendant was not told he had been judged noncompliant and thus was responsible for extended reporting; there was no actual notice of the fact of the extension until after defendant's arrest; there was no actual notice to defendant of his felony liability; and extensions and arrests did not follow every incident of noncompliance. Accordingly, defendant claims the extensions and arrests in this case were done solely at the discretion of the police officers.

We disagree with the circuit court and defendant that this case is similar to *Kolender*. At issue in *Kolender* was a criminal

statute requiring persons who loiter or wander on the streets to provide a "credible and reliable" identification and to account for their presence when requested by a peace officer under circumstances that would justify a stop under the standards of *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). *Kolender*, 461 U.S. at 353, 75 L. Ed. 2d at 906, 103 S. Ct. at 1856. The Supreme Court held the statute violated the due process clause of the fourteenth amendment because the statute contained no standard for determining what a suspect had to do to satisfy the requirement that he provide a "credible and reliable" identification. *Kolender*, 461 U.S. at 358, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858. The Supreme Court observed that the statute vested "virtually complete discretion in the hands of the police to determine whether the suspect has satisfied the statute and must be permitted to go on his way in the absence of probable cause to arrest." *Kolender*, 461 U.S. at 358, 75 L. Ed. 2d at 909, 103 S. Ct. at 1858. The full discretion afforded to the police to determine whether a suspect had provided a "credible and reliable" identification entrusted lawmaking to the judgment of the policeman, moment to moment, and conferred upon police a " 'virtually unrestrained power to arrest and charge persons with a violation.' " *Kolender*, 461 U.S. at 360, 75 L. Ed. 2d at 911, 103 S. Ct. at 1860, quoting *Lewis v. City of New Orleans*, 415 U.S. 130, 135, 39 L. Ed. 2d 214, 220, 94 S. Ct. 970, 973 (1974) (Powell, J., concurring in result). The Supreme Court noted that although the initial detention was justified, the statute was unconstitutionally vague because the statute failed to establish standards by which the officers could determine whether the suspect had complied with the subsequent identification requirement. *Kolender*, 461 U.S. at 361, 75 L. Ed. 2d at 911, 103 S. Ct. at 1860.

In this case, there is no corresponding constitutional problem with regard to the Registration Act and the Code. As discussed, those provisions clearly state what an offender must do in order to violate the Registration Act and in order to become subject to the 10-year registration extension and the Class 4 felony penalty. In contrast to the statute at issue in *Kolender*, the Registration Act and the Code give no discretion

to law enforcement officers and triers of fact to determine whether an offender has violated the Registration Act and the Code.

We also disagree with the circuit court and defendant that the Registration Act and the Code vest complete discretion in the hands of law enforcement officers because extensions and arrests did not follow every incidence of noncompliance. In this case, defendant failed to register for the years 2000 and 2001, in violation of the Registration Act. The 10-year extension for violating the Registration Act first was imposed when defendant resumed registering in 2002. As the State observes, tolling the application of the extension period reflected a commonsense reading of the statute. If an extension began to run at the time of the violation, a sex offender could simply "lie low" until the extension expired, thereby rendering the registration scheme a nullity. In fact, the 2002 amendment to section 7 confirms the State's interpretation of the statute. Effective August 2, 2002, section 7 was amended to provide that "[t]he registration period for any sex offender who fails to comply with any provision of the Act shall extend the period of registration by 10 years *beginning from the first date of registration after the violation.*" (Emphasis added.) 730 ILCS 150/7 (West 2004). Consequently, we accord no significance to the fact that extensions were not imposed upon the first instance of defendant's noncompliance with registration requirements.

Likewise, the fact that defendant was not arrested when he registered in 2002, following two years of noncompliance with the Registration Act, does not establish that the statute vests complete discretion in the hands of police officers. As the State has argued, under the Criminal Code, a police officer may arrest when he has reasonable ground to believe that an offense has been committed (725 ILCS 5/107–2(c) (West 2002)), but he is not required to do so. "[T]here is no right to be arrested once an alleged violation has occurred." *People v. Lawson*, 67 Ill. 2d 449, 457 (1977).

Accordingly, we find that the Registration Act and the Code do not promote arbitrary enforcement and are not unconstitutionally vague as applied to defendant under the due

process clauses of the Illinois and the United States Constitutions. It follows, then, that those provisions are not unconstitutionally vague on their face. We therefore reverse the circuit court's finding that the Registration Act and the Code are unconstitutionally vague in violation of the due process clause.

For the foregoing reasons, we reverse the circuit court's order declaring the Registration Act and the Code unconstitutional. We therefore remand this cause for further proceedings consistent with this opinion.

*Circuit court judgment reversed;*
*cause remanded.*

JUSTICE BURKE took no part in the consideration or decision of this case.