No. 2-08-1086     Filed:  9-10-10

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 07--CF--2795 |
| MICHAEL A. PETERSON, | ) ) | Honorable Allen M. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE O'MALLEY delivered the opinion of the court:

After the court found defendant, Michael A. Peterson, unfit to stand trial, it held a discharge hearing and found defendant "not not guilty" (see People v. Waid, 221 Ill. 2d 464, 470 (2006) (at a discharge hearing, if the evidence is sufficient to establish the defendant's guilt, no conviction is entered; instead, a finding of not not guilty is entered)) of failing to comply with sex-offender registration requirements. Defendant asserts that the evidence at that hearing was insufficient and that the court should have therefore acquitted him. We agree with defendant; we therefore reverse the "not not guilty" finding and hold him to be acquitted.

I. BACKGROUND

The parties agree that defendant had a misdemeanor sex-crime conviction in Michigan and was, as a result, subject to the provisions of the Sex Offender Registration Act (Act) (730 ILCS

150/2 et seq. (West Supp. 2007)). He was indicted on one count of "knowing[] fail[ure] to register a change of address" as required by the Act. See 730 ILCS 150/3(a) (West Supp. 2007).

The court found defendant unfit to stand trial because of his cognitive deficits and lack of knowledge of the legal system. It said that he had "limited ability to recollect obvious occurrences and events."

After defendant had been treated for months in a facility of the Department of Human Services, the Department reported that he was unlikely to be restored to fitness within the one-year statutory period. The report stated that defendant, who was then in his 40s, had an IQ of 63 and the functionality of a 7½-year-old. He suffered from a seizure disorder and had moderately impaired long- and short-term memory.

Based on the report, defense counsel sought a discharge hearing under section 104--25 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/104--25 (West 2008)).

On the day of the discharge hearing, the parties stipulated that defendant would not be restored to fitness within a year.

The first witness for the State, William Homeier, a community service officer with the Elgin police, testified that he was responsible for taking sex-offender registrations. On August 14, 2007, defendant came to register himself as a sex offender. He said that he was homeless, and Homeier told him that he would have to register weekly. Homeier explained the difference between registering as homeless and registering with a permanent address.

Defendant returned on August 21, 2007, and reported an address of 635 North Spring Street in Elgin. Homeier told him that, with a fixed address, he would be required to register only once a year. Defendant said that he was renting from someone named "John," whose last name and phone

number he could not remember. Defendant said that he had gone to Michigan to visit his mother, and he brought in documentation showing that he had registered with Michigan authorities while there. Homeier said that defendant would sometimes stop by the police department just to say "hello" and to use the men's room.

Roberto Romero testified that he lived at 635 North Spring Street with his family. He did not know defendant. On the second floor the building had a separate apartment with the address 637 North Spring Street. He and his father owned the building. He did not remember the names of the tenants in August 2007, but he said they were a married man and his girlfriend, both Hispanic. He said that the second-floor apartment had three bedrooms.

Officer Travis Hooker of the Elgin police testified that he had arrested defendant for disorderly conduct on September 23, 2007. After looking at defendant's booking card, he recalled that defendant had said that he was homeless. He could not recall whether defendant was intoxicated when he arrested him.

Detective Kevin Senne of the Elgin police testified that, on August 10, 2007, he met with defendant to check on the details of a sex-offender registration that defendant made on August 9, 2007. He advised defendant that he would have to register weekly. On September 12, 2007, Senne went to try to verify defendant's Spring Street address. He spoke to Romero; because of that conversation, Senne continued investigating. On September 21, 2007, he reached defendant by phone at the Wayside Center, a homeless shelter. Senne told defendant that they needed to meet and that defendant was violating the Act, but he did not give him a specific deadline by which to meet. He also asked defendant if he was really "staying with John." Defendant told him that he stayed there some nights and stayed other places other nights.

On September 23, 2007, after Hooker arrested defendant, Senne met with him in jail. Because defendant was "extremely intoxicated," Senne did not attempt to interview him there.

Defendant did not put on any evidence.

The State's closing argument was a mixture of arguments that defendant had falsely reported a permanent residence and that he had failed to comply with the requirement that homeless offenders register weekly. Defendant argued that the State had not proven the charge in the indictment, knowing failure to register a change of address. The State responded with an argument that defendant had knowingly given a false address.

The court ruled that, taking into account that the owner of the building, also a resident, was not aware of defendant and that defendant had admitted his homelessness on September 23, the State had put on sufficient evidence of defendant's guilt, so that it would not enter an acquittal. It ordered 15 months of further treatment of defendant, a period to end on January 5, 2010.

Defendant moved to reconsider, asserting only that the State had failed to prove his guilt beyond a reasonable doubt. The court denied the motion, and defendant appealed.

On appeal, defendant argues that, because under section 3(a) of the Act (730 ILCS 150/3(a) (West Supp. 2007)), an offender must register as a "place of residence" any addresses at which he or she stays for five or more days in aggregate in a calendar year, defendant's admission on September 23, 2007, that he was then homeless was not necessarily inconsistent with his having a "place of residence." He further argues that, given the two addresses at the building at which he claimed to have stayed, the State failed to prove that he knowingly gave the police an address that was not an address at which he had stayed for five days.

The parties disagree whether this matter is moot. Initially, defendant argued that this matter fell under a supposed general mental-health-case exception to the mootness doctrine. The State responded that the supreme court, in In re Alfred H.H., 233 Ill. 2d 345, 354-55 (2009), has held that no general mental-health exception to the mootness doctrine exists. Defendant has now replied that the case is not moot at all--that reversal would remove the possibility that, under section 104--25(g)(1) of the Code (725 ILCS 5/104--25(g)(1) (West 2006)), he would face conviction on the charge involved here should he become fit. Neither party has provided evidence of what disposition the court made of defendant on January 5 of this year, when the 15-month extended treatment period ended.

## II. ANALYSIS

We begin by considering whether the matter is moot. On the record before us, we cannot conclude that it is. We will not dismiss an appeal where the issue involved is only possibly moot. See Pinnacle Corp. v. Village of Lake in the Hills, 258 Ill. App. 3d 205, 208 (1994) (a case should not be dismissed as moot where the record does not rule out effective relief). Here, several possibilities exist under which the matter would not be moot. We describe only one of these. Under the Code:

"(d) If the discharge hearing does not result in an acquittal of the charge the defendant may be remanded for further treatment and the one year time limit set forth in Section 104--23 shall be extended as follows:

(1) If the most serious charge upon which the State sustained its burden of proof was a Class 1 or Class X felony, the treatment period may be extended up to a maximum treatment period of 2 years; if a Class 2, 3, or 4 felony, the treatment period may be extended up to a maximum of 15 months;

* * *

(g) At the expiration of an extended period of treatment ordered pursuant to this Section:

***

(2) If the defendant continues to be unfit to stand trial, the court shall determine whether he or she is subject to involuntary admission under the Mental Health and Developmental Disabilities Code or constitutes a serious threat to the public safety. If so found, the defendant shall be remanded to the Department of Human Services for further treatment and shall be treated in the same manner as a civilly committed patient for all purposes, except that the original court having jurisdiction over the defendant shall be required to approve any conditional release or discharge of the defendant, for the period of commitment equal to the maximum sentence to which the defendant would have been subject had he or she been convicted in a criminal proceeding." 725 ILCS 5/104--25(d)(1), (g)(2) (West 2006).

We do not know what happened to defendant at the end of the 15-month treatment period that the court ordered pursuant to section 104--25(d)(1). However, one possibility is that the court civilly committed defendant under section 104--25(g)(2) (725 ILCS 5/104--25(g)(2) (West 2006)). The matter could not be moot while he remained committed; section 104--25(g)(2) is available only when the court does not acquit an unfit defendant. It imposes conditions on the commitment to which persons under ordinary civil commitment are not subject. Reversal would, if nothing else, remove those conditions. Because the record does not exclude the possibility of effective relief, such as removal of those conditions, the State has not established mootness.

Turning to the merits of the matter, we hold that the evidence was insufficient to establish that defendant committed the offense, so that the court should have entered a judgment of acquittal.

"[A discharge hearing] is an 'innocence only' proceeding that results in a final adjudication of charges only if the evidence fails to establish the defendant's guilt beyond a reasonable doubt (resulting in the defendant's acquittal) or the defendant is found not guilty by reason of insanity. If the evidence is found to be sufficient to establish the defendant's guilt, no conviction results. Instead, the defendant is found <u>not</u> not guilty ***." (Emphasis in original.) Waid, 221 Ill. 2d at 469-70.

"Although a court's determination at a discharge hearing that the State has proved the defendant's guilt beyond a reasonable doubt does not constitute a technical determination of guilt, the standard of proof is the same as that required for a criminal conviction." People v. Williams, 312 Ill. App. 3d 232, 234 (2000). Therefore, the standard of review is the familiar one outlined in People v. Collins, 106 Ill. 2d 237, 261 (1985):

"When presented with a challenge to the sufficiency of the evidence, it is not the function of [the reviewing] court to retry the defendant. *** [Rather,] 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) Collins, 106 Ill. 2d at 261, quoting Jackson v. Virginia, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979).

The first problem here is deciding what violation the court thought the State had proven. The indictment said that defendant had failed to register a change of address. The State presented no evidence tending to prove that--if anything, its evidence tended to prove that defendant had been

homeless over the entire period. (Defendant has not discussed the variance from the indictment.) The State argued both that defendant gave a false address and that he failed to comply with the Act's requirement that a person lacking a fixed residence register weekly. The court's comments when entering the "not not guilty" finding are not completely clear, but they suggest that it accepted both theories.

Before examining the evidence against defendant, we review the Act's registration requirements:

"(a) A sex offender *** shall, within the time period prescribed in subsections (b) and (c), register in person and provide accurate information as required by the Department of State Police. Such information shall include a *** current address ***. *** The sex offender *** shall register:

(1) with the chief of police in the municipality in which he or she resides or is temporarily domiciled for a period of time of 5 or more days ***; ***

* * *

For purposes of this Article, the place of residence or temporary domicile is defined as any and all places where the sex offender resides for an aggregate period of time of 5 or more days during any calendar year. Any person required to register under this Article who lacks a fixed address or temporary domicile must notify, in person, the agency of jurisdiction of his or her last known address within 5 days after ceasing to have a fixed residence.

Any person who lacks a fixed residence must report weekly, in person, with *** the chief of police in the municipality in which he or she is located. The agency of jurisdiction

will document each weekly registration to include all the locations where the person has stayed during the past 7 days.

* * *

(b) Any sex offender, *** regardless of any initial, prior, or other registration, shall, within 5 days of *** establishing a residence ***, or temporary domicile in any county, register in person as set forth in subsection (a) or (a--5).

(c) The registration for any person required to register under this Article shall be as follows:

* * *

(5) The person shall provide positive identification and documentation that substantiates proof of residence at the registering address." 730 ILCS 150/3(a)(1), (b), (c)(5) (West Supp. 2007).

Per section 2(I) of the Act, a "fixed residence" means "any and all places that a sex offender resides for an aggregate period of time of 5 or more days in a calendar year." 730 ILCS 150/2(I) (West Supp. 2007).

The Act thus defines "fixed residence," "place of residence," and "temporary domicile" all as places an offender stays an aggregate of five or more days in a calendar year. An offender who has an arrangement that provides accommodations for five days in a year has to register that residence within five days of establishing it, and that offender is then not a person lacking a fixed residence. Under the most straightforward reading of the section, an offender who waits to register an occasional address until after he or she has stayed five days has waited too long, at least if he or she

could have anticipated the length of the stay. A person can be homeless by any normal standards and still have a "fixed residence" if he or she has an occasional but predictable place to stay.

With this background, we start by considering the theory that defendant violated the Act by giving a false address. The Act requires an offender to provide a "current address," a term that (unlike "fixed residence" and "temporary domicile") it leaves undefined. The Act also requires the offender to provide accurate information. Giving an address to which one has no connection does not satisfy the requirement to give an accurate current address. Defendant argues that, given his intellectual limitations and the unusual configuration of the addresses at the building with the address he reported, the probability that defendant made an error in reporting his address is too high for the court's ruling to stand. The State argues initially that this would not matter, that giving accurate information is a registration requirement and that any failure to comply, intentional or not, with a registration requirement is a violation.

Resolving this issue requires us to interpret the applicable portion of Act's penalty provision, section 10(a):

"[1] Any person who is required to register under this Article who violates any of the provisions of this Article *** is guilty of a Class 3 felony. *** [2] Any person who is required to register under this Article who knowingly or wilfully gives material information required by this Article that is false is guilty of a Class 3 felony. Any person convicted of a violation of any provision of this Article shall, in addition to any other penalty required by law, be required to serve a minimum period of 7 days confinement in the local county jail. The court shall impose a mandatory minimum fine of $500 for failure to comply with any provision of this Article." 730 ILCS 150/10(a) (West Supp. 2007).

The State's interpretation would render the second clause of section 10(a) meaningless. "[A] court should avoid an interpretation of a statute that would render any portion of it meaningless or void." People v. Isunza, 396 Ill. App. 3d 127, 130 (2009). If the requirement for a knowing or willful violation in the second clause is to have any meaning, the first clause cannot apply to the requirement that an offender give accurate information. This holding comports with that of the supreme court in People v. Molnar, 222 Ill. 2d 495, 520-21 (2006), which, while holding that the first clause created an absolute liability offense, specifically noted that the second clause had a mental state requirement. Contrary to what the State argues, we do not think the fact that the offense has an enhanced minimum sentence can possibly suggest an intent by the legislature to create an absolute liability offense.

Given defendant's documented cognitive limitations, the evidence that he knowingly or willfully gave a false address is insufficient. Undoubtedly, the evidence showed that defendant was not living at 635 North Spring Street. However, particularly when a person has "limited ability to recollect obvious occurrences and events," the fact that he gave wrong information is insufficient to show that he did so knowingly or willfully. Nothing in the evidence ruled out defendant's temporary residence at an address that defendant might easily have confused with "635 North Spring Street." The evidence that a Hispanic couple stayed at 637 North Spring Street might make it somewhat unlikely that that was defendant's temporary address, but it certainly does not make it impossible. Further, the State presented no evidence that he did not make another understandable mistake, such as 635 for 653, or North for South.

We would agree that a clear showing that defendant never had any place he had expected to stay regularly would be sufficient, but that was not present here. The State and the court apparently

placed great weight on defendant's statement on arrest that he was homeless. Although that was relevant, it was insufficient. A person could have a "fixed residence" by the Act's definition and yet be homeless by the ordinary way of speaking. That defendant showed the Elgin police that he had registered during a short visit to Michigan shows that he was aware that he needed to register even temporary addresses.

The evidence most harmful to defendant was Homeier's description of him as saying that he was "renting" from someone. "Renting" typically connotes an arrangement of some permanence. However, "renting" could also apply to an arrangement in which a person pays for occasional use of a space.

Homeier's testimony that defendant stopped in at the police station regularly, if only to use a men's room, weakens the State's theory that defendant made up a false address to avoid the weekly registration requirement. Given that he was already going to the police station regularly, it seems unlikely that he would risk arrest merely to avoid weekly visits to the police station.

Considering all these factors, we agree with defendant that the State failed to show beyond a reasonable doubt that defendant knowingly gave false registration information.

We turn now to the State's theory that defendant failed to comply with the weekly registration requirement. We determine that the State's contention on this point fails because there is insufficient evidence that defendant knowingly provided a false address.

Our reasoning starts with further consideration of the Act's registration requirements. Reading section 3(b) literally, if defendant had any "fixed residence," even one he had failed to report, the section would not require weekly reporting. Thus, to prove a violation, the State would have to prove that defendant did not have any place that he could be staying for five days during a year. Such

a reading is inconvenient and probably absurd. Surely the weekly reporting requirement applies both to those with no "fixed residence" at all and to those who have a "fixed residence," but have not reported it. Ordinary principles of statutory construction require that expansion. See Isunza, 396 Ill. App. 3d at 130 ("A court should not construe a statute in a manner that would lead to consequences that are absurd, inconvenient, or unjust").

However, in keeping with section 10(a)'s second clause, requiring proof that an offender has knowingly or willfully given false information, the accidental misreport of the address of a real fixed residence cannot be bootstrapped into a violation of the weekly reporting requirement for those with no "fixed residence." Thus, an offender who tries to register a real "fixed residence" but makes a mistake is not subject to the weekly reporting requirement. Because the State proved neither that defendant lacked a "fixed residence" nor that he deliberately lied about his address, it did not prove enough to show that defendant was subject to the weekly reporting requirement.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's finding of "not not guilty" and acquit defendant of violating the registration requirements of the Act.

Reversed.

BOWMAN and SCHOSTOK, JJ., concur.

-13-